MARY ANN WILCOX, PLAINTIFF v. CITY OF ASHEVILLE; WILLIAM HOGAN, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS THE CHIEF OF THE CITY OF ASHEVILLE POLICE DEPARTMENT; STONY GONCE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A POLICE OFFICER FOR THE CITY OF ASHEVILLE; BRIAN HOGAN, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A POLICE OFFICER FOR THE CITY OF ASHEVILLE; CHERYL INTVELD, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A POLICE OFFICER FOR THE CITY OF ASHEVILLE, DEFENDANTS

No. COA12-12

(Filed 7 August 2012)

**1. Appeal and Error—interlocutory order—substantial right—public official immunity**

While an order denying summary judgment is an interlocutory order from which there is generally no right to appeal, a public official may immediately appeal from an interlocutory order denying a summary judgment motion based on public official immunity.

**2. Immunity—public official immunity—individual capacity—malice exception—summary judgment denied**

The trial court did not err in a negligence case by denying summary judgment for three officers on plaintiff's claims against them in their individual capacities even though the officers claimed public official immunity. Viewed in the light most favorable to plaintiff, the evidence established that there were genuine issues of material fact regarding the applicability of the malice exception to public official immunity. However, with respect to any claims plaintiff asserted against a fourth officer, the chief, in his individual capacity, this case was remanded to the trial court for entry of summary judgment in the chief's favor.

3. **Constitutional Law—state constitutional claims—summary judgment—claims against individual police officers was adequate remedy**

> The trial court did not err in a negligence case by granting summary judgment for defendant police officers on plaintiff's state constitutional claims. Plaintiff's claims against the individual defendants in their individual capacities served as an adequate remedy.

Appeal by Defendants from order entered 9 September 2011 and cross-appeal by Plaintiff from order entered 9 September 2011 and amended order entered 15 September 2011 by Judge Alan Z. Thornburg in Buncombe County Superior Court. Heard in the Court of Appeals 23 May 2012.

*Hyler & Lopez, P.A., by Stephen P. Agan and George B. Hyler, Jr., for Plaintiff.*

*Parker Poe Adams & Bernstein LLP, by Jason R. Benton and Kelly L. Whitlock, for Defendants.*

*Patterson Harkavy LLP, by Burton Craige, and Tin Fulton Walker & Owen, PLLC, by S. Luke Largess, for Amicus North Carolina Advocates for Justice.*

*General Counsel Kimberly S. Hibbard and Senior Assistant General Counsel Gregory F. Schwitzgebel III for Amicus North Carolina League of Municipalities.*

STEPHENS, Judge.

In May 2007, Plaintiff Mary Ann Wilcox was shot by Asheville Police Department ("APD") officers during APD's pursuit of a vehicle in which Wilcox was the only occupant other than the driver. The pursuit began when the driver of the vehicle sped away from an APD officer during a traffic stop. At several points during the approximately 20-minute pursuit, which involved multiple APD officers and reached speeds up to 45 miles per hour, APD officers Defendant Stony Gonce, Defendant Brian Hogan, and Defendant Cheryl Intveld attempted to stop the vehicle by shooting at the vehicle and its driver. A total of 27 bullets were fired; Gonce fired six, Hogan fired 17, and Intveld fired four. Later investigation revealed that the vehicle was hit with 16 bullets, the driver was not hit by any of the bullets, and Wilcox was hit by two bullets.

Thereafter, Wilcox commenced the present action in Buncombe County Superior Court against Defendant City of Asheville, as well as against APD Chief Defendant William Hogan ("Chief Hogan") and officers Gonce, Hogan, and Intveld (collectively, the "Individual Defendants") in both their official and individual capacities, asserting claims for (1) "negligence, gross negligence, recklessness, wilfull [sic] and wanton conduct" by Gonce, Hogan, and Intveld in shooting Wilcox; (2) "imputed liability" of the City of Asheville for Gonce's, Hogan's, and Intveld's actions; (3) "negligence, gross negligence, recklessness, willful and wanton conduct" by the City of Asheville and Chief Hogan in failing to adequately train and supervise Gonce, Hogan, and Intveld; (4) "violation of [Wilcox's] state constitutional rights" by all Defendants; and (5) punitive damages for the "egregiously wrongful, malicious, willful and/or wanton" conduct of the Individual Defendants.

Subsequently, pursuant to a motion by the City of Asheville and the Individual Defendants in their official capacities, the trial court dismissed all claims against those Defendants as barred by governmental immunity. Defendants later filed a motion for summary judgment seeking dismissal of Wilcox's remaining claims as follows: (1) public official immunity as barring all claims against the Individual Defendants in their individual capacities; and (2) the existence of an adequate state remedy as barring the claims arising under the North Carolina Constitution. The trial court partially granted the motion, dismissing the state constitutional claims and leaving as Wilcox's only viable claims those against the Individual Defendants in their individual capacities. From that order partially granting summary judgment for Defendants, both Wilcox and Defendants appeal.[1] We review a trial court's summary judgment order *de novo*, viewing all evidence in the light most favorable to the nonmoving party. *Sturgill v. Ashe Memorial Hosp., Inc.*, 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007), *disc. review denied*, 362 N.C. 180, 658 S.E.2d 662 (2008).

*Defendants' appeal*

[1] Defendants appeal from that portion of the trial court's order denying summary judgment for the Individual Defendants on Wilcox's

---

1. On 9 September 2011, Defendants gave notice of appeal from the trial court's order entered that same day. Pursuant to Wilcox's subsequent motion for certification of the court's order "as a final ruling under Rule 54(b) of the [North Carolina] Rules of Civil Procedure," the trial court entered a 15 September 2011 order amending its previous order to include a Rule 54(b) certification. On 16 September 2011, Wilcox gave notice of appeal from both of the trial court's orders.

claims against them in their individual capacities. While an order denying summary judgment is an interlocutory order from which there is generally no right to appeal, this Court has previously held that a public official—which each of the Individual Defendants is, *Campbell v. Anderson,* 156 N.C. App. 371, 376, 576 S.E.2d 726, 730, *disc. review denied,* 357 N.C. 457, 585 S.E.2d 385 (2003)—may immediately appeal from an interlocutory order denying a summary judgment motion based on public official immunity. *Free Spirit Aviation, Inc. v. Rutherford Airport Auth.,* 191 N.C. App. 581, 583, 664 S.E.2d 8, 10 (2008). Thus, Defendants' appeal of the trial court's order declining to dismiss the claims against them on grounds of public official immunity is properly before this Court.

**[2]** Public official immunity is "a derivative form" of governmental immunity, *Epps v. Duke Univ.,* 122 N.C. App. 198, 203, 468 S.E.2d 846, 850, *disc. review denied,* 344 N.C. 436, 476 S.E.2d 115 (1996), which precludes suits against public officials in their individual capacities as follows:

> As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability.

*Smith v. State,* 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976). Thus, a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt. *Id.* As Wilcox has not alleged that the Individual Defendants' actions were corrupt or outside the scope of their authority,[2] the only

---

2. Wilcox contends that her complaint "inartfully" raises the issue of whether the Individual Defendants acted beyond the scope of their official authority. However, those portions of the complaint that Wilcox claims raise that issue address only the Individual Defendants' alleged negligence, recklessness, and maliciousness. As Defendants correctly note, this Court has previously held that a plaintiff must separately allege the exceptions to public official immunity. *See Epps,* 122 N.C. App. at 207, 468 S.E.2d at 853 ("[I]f a plaintiff wishes to sue a public official in his [] individual capacity, the plaintiff must, *at the pleading stage and thereafter,* demonstrate that the official's actions . . . are commensurate with one of the [] exceptions." (emphasis added)); *Pigott v. City of Wilmington,* 50 N.C. App. 401, 402-03, 273 S.E.2d 752, 753-54 (noting that a claim against an official is subject to dismissal *"unless it be alleged and proved"* that the official acted beyond his authority, maliciously, or corruptly (emphasis in original) (quoting *Smith,* 289 N.C. at 331, 222 S.E.2d at 430)), *cert. denied,* 303 N.C. 180, 280 S.E.2d 453 (1981). As Wilcox did not allege that the Individual Defendants acted beyond the scope of their authority—and, indeed, instead alleged that the Individual Defendants "were acting in the course and scope of their employment and their agency as [] police officers"—Wilcox may not now attempt to establish that the Individual Defendants acted beyond the scope of their authority.

relevant exception to public official immunity is malice. The questions on appeal, then, are (1) what is malice, and (2) did Wilcox sufficiently forecast its existence in this case?

As for the first question, the most commonly-cited definition of malice in this context is from our Supreme Court's decision in *In re Grad v. Kaasa*, which states that "[a] defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). Thus, elementally, a malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another. *Id.* There is little disagreement between the parties on what type of conduct, generally, would satisfy the first two elements, but on the third element—intent to injure—the parties' positions diverge.

While Wilcox contends that the intent to injure may be implied by the actor's conduct such that direct evidence of a defendant's actual intent to injure the plaintiff is unnecessary, the Individual Defendants contend in their brief that only direct evidence of a defendant's actual intent to injure the plaintiff is sufficient. Hardening this position at oral argument, the Individual Defendants asserted that nothing but a statement by each of them that he or she was intending to injure Wilcox would be sufficient to show intent to injure and, thus, show malice. The authority in this State, however, does not support the Individual Defendants' rigid position on this issue.

Although there are no decisions in North Carolina addressing the sufficiency of evidence of an implied intent to injure *specifically* in the public official immunity context, our Supreme Court has held *generally* that "the intention to inflict injury may be constructive as well as actual" and that constructive intent to injure exists where the actor's conduct "is so reckless or so manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of [willfulness] and wantonness equivalent in spirit to an actual intent." *Foster v. Hyman*, 197 N.C. 189, 192, 148 S.E. 36, 38 (1929). Further, in *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985), where our Supreme Court held that evidence of constructive intent, as defined in *Foster*, may be sufficient to show intentional injury in the workers' compensation context, the Court noted the broad applicability of the constructive intent doctrine, stating that "wanton and reckless behavior *may be equated* with an intentional act" for various purposes beyond workers' compensation actions, including intentional tort claims, punitive damages claims, and

second-degree murder prosecutions. *Id.* at 715, 325 S.E.2d at 248 (emphasis added). In light of our Supreme Court's broad acceptance of the constructive intent doctrine in multiple situations where findings of malice and intent are required, the doctrine should, likewise, apply here so long as the doctrine's application accords with the purpose and rationale for extending immunity to public officials in the first place. *Cf. id.* at 712, 716-17, 325 S.E.2d at 246-47, 249-50 (in deciding whether to equate wanton and reckless conduct with intentional torts with respect to co-employee immunity in workers' compensation context, reviewing "social policy" of workers' compensation scheme and "rationale supporting co-employee immunity"). We believe it does.

The policy underpinnings of public official immunity have been described as follows:

It is generally recognized that public officers and employees would be unduly hampered, deterred and intimidated in the discharge of their duties, if those who acted improperly, or even exceeded the authority given them, were not protected to some reasonable degree by being relieved from private liability. Accordingly, the rationale for official immunity is the promotion of fearless, vigorous, and effective administration of policies of government. The threat of suit could also deter competent people from taking office.

*Pangburn v. Saad,* 73 N.C. App. 336, 344, 326 S.E.2d 365, 370 (1985) (citing 63A AM. JUR. 2D *Public Officers and Employees* § 358 (1984)); *see also* 63C AM. JUR. 2D *Public Officers and Employees* § 298 (2009). Thus, officials have been granted this immunity in order to promote (1) the primary goal of allowing public officials to perform their duties vigorously without undue hampering and deterrence, and (2) the secondary goal of ensuring effective democratic government. *See Pangburn,* 73 N.C. App. at 344, 326 S.E.2d at 370; *see also Epps,* 122 N.C. App. at 203, 468 S.E.2d at 850-51 ("If governmental officials were constantly exposed to the threat of personal liability at the hands of disgruntled or damaged citizens, the basis of our democracy might well be jeopardized."). In our view, applying the doctrine of constructive, rather than actual, intent to injure in this case does not hinder the promotion of either of those goals.

Although undeterred and vigorous enforcement of official duties is a generally laudable goal in this State, with respect to the use of deadly force in apprehending criminal suspects, our legislature has

evinced a clear intent to hamper and deter officers performing that specific duty. As noted by our Supreme Court, North Carolina General Statutes Section 15A-401(d)—which delimits those situations in which use of deadly force by law enforcement officers may be "justified," N.C. Gen. Stat. § 15A-401(d) (2011)—was designed solely "to codify and clarify those situations in which a police officer may use deadly force *without fear of incurring criminal or civil liability.*" *State v. Irick*, 291 N.C. 480, 501, 231 S.E.2d 833, 846 (1977) (emphasis added). Implicit in that codification is the notion that unjustified use of deadly force may lead to civil liability.

Moreover, section 15A-401(d) states that "[n]othing in this subdivision constitutes justification for willful, malicious or criminally negligent conduct by any person which injures or endangers any person." N.C. Gen. Stat. § 15A-401(d)(2). In labeling as unjustified "criminally negligent conduct"—that is, "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others," *State v. Weston*, 273 N.C. 275, 280, 159 S.E.2d 883, 886 (1968) (quoting *State v. Cope*, 204 N.C. 28, 30, 167 S.E.2d 456, 458 (1933))—our legislature has "clarified" for law enforcement officers that they may be subject to liability for "recklessness" or "heedless indifference to the safety and rights of others" when using deadly force. Indeed, the commentary to section 15A-401(d) notes that

> the law[ ]enforcement officer cannot act with indifference to the safety of others in the use of force. Shooting into a crowded street would be an obvious example of criminally negligent conduct, and this section would not justify such action.

N.C. Gen. Stat. § 15A-401 (official commentary to subsection(d)). Thus, because our legislature has already "clarified" for law enforcement officers that they may be liable for reckless conduct that is short of being intentionally injurious, we cannot conclude that allowing constructive intent to satisfy the malice exception to public official immunity would *unduly* hamper officials' use of deadly force or would undermine effective democratic government in this State in any way. We conclude instead that adopting the constructive intent doctrine in this context would not hinder the achievement of the goals of public official immunity, and we hold that evidence of constructive intent to injure may be allowed to support the malice exception to that immunity.

**WILCOX v. CITY OF ASHEVILLE**

[222 N.C. App. 285 (2012)]

We are satisfied that this conclusion does not, as the Individual Defendants contended at oral argument, effectively turn the malice exception into a "reckless indifference" exception. As noted in previous decisions of this Court, a plaintiff may not satisfy her burden of proving that an official's acts were malicious through allegations and evidence of *mere* reckless indifference. *See, e.g., Schlossberg v. Goins*, 141 N.C. App. 436, 446, 540 S.E.2d 49, 56 (2000) (emphasis added) (citation omitted), *disc. review denied*, 355 N.C. 215, 560 S.E.2d 136 (2002). Rather, as discussed *supra*, the plaintiff must show at least that the officer's actions were "*so reckless or so manifestly indifferent to the consequences* . . . as to justify a finding of [willfulness] and wantonness *equivalent in spirit to an actual intent.*" *Foster*, 197 N.C. at 192, 148 S.E. at 38 (emphasis added). Thus, in line with our previous holdings, and contrary to the Individual Defendants' position, a showing of mere reckless indifference is insufficient, and a plaintiff seeking to prove malice based on constructive intent to injure must show that the level of recklessness of the officer's action was so great as to warrant a finding equivalent in spirit to actual intent.

Although we have concluded that Wilcox *may* satisfy her burden of proving the malice exception by forecasting sufficient evidence of the Individual Defendants' implied intent to injure, along with evidence that satisfies the other two elements of malice—that the Individual Defendants' acts were contrary to their duty and done wantonly—whether she has done so is a separate factual question to be answered for each Individual Defendant based on the evidence presented in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," N.C. Gen. Stat. § 1A-1, Rule 56(c) (2011), viewed in the light most favorable to Wilcox. *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 353-54 (2009).

First, with respect to Chief Hogan, Wilcox alleged in her complaint that she was entitled to recover compensatory and punitive damages from Chief Hogan in his individual capacity based on his reckless, willful, wanton, and malicious failure to provide "adequate policies and procedures," "adequate training," and "adequate control and supervision." The trial court denied summary judgment for Defendants as to all of Wilcox's "individual-capacity tort law and punitive damages claims," allowing these individual-capacity claims against Chief Hogan to proceed. We think this was error. Beyond Wilcox's vague allegations, she alleged no specific actions or omis-

sions by Chief Hogan that would constitute a failure to train or supervise. Furthermore, Wilcox has presented no evidence of any specific conduct by Chief Hogan amounting to a failure to adequately train or supervise. Rather, the evidence shows that APD provided its officers with training and operational guidelines that instruct officers on appropriate conduct for vehicular pursuits and the use of deadly force.[3] Accordingly, we conclude that Wilcox's failure to support her claim against Chief Hogan on the theory of inadequate training and supervision warrants judgment for Defendants on Wilcox's individual-capacity tort claims against Chief Hogan. *See Epps*, 122 N.C. App. at 207, 468 S.E.2d at 853 ("[I]f a plaintiff wishes to sue a public official in his [] individual capacity, the plaintiff must, at the pleading stage *and thereafter*, demonstrate that the official's actions . . . are commensurate with one of the [] exceptions." (emphasis added)); *see also Turner v. City of Greenville*, 197 N.C. App. 562, 567 n.2, 677 S.E.2d 480, 484 n.2 (2009) (declining to address allegations of negligent training and supervision claim where plaintiffs' "[c]omplaint alleges no specific acts or omissions that might constitute [] a failure to adequately train, [p]laintiffs' forecast of evidence before the trial court did not substantiate this allegation, the trial court's judgment does not address this theory of liability, and [p]laintiffs have not argued this theory on appeal").

As for Gonce, the evidence before the trial court tended to show the following: During the pursuit, Gonce heard radio transmissions indicating that there was a passenger in the vehicle. Later, despite being told over the radio not to join the pursuit, Gonce drove to an apartment complex where the pursuit was expected, exited his patrol car, and positioned himself in front of his car with the intention of deploying "stop sticks." When the pursued vehicle arrived at Gonce's location and began approaching him at 25 miles per hour, Gonce fired six bullets, one of which was later determined to have struck Wilcox. In our view, the foregoing evidence, taken in the light most favorable to Wilcox, is sufficient to raise a genuine issue of fact as to the existence of the elements of malice, *i.e.*, that Gonce's actions were contrary to his duty, wanton, and so reckless as to justify a finding of intent to injure.

As for the requirement that Gonce's actions must have been contrary to his duty, we first note that section 15A-401(d) provides that a

---

3. We also note that while the Individual Defendants argue on appeal that summary judgment should have been granted for all "Defendant-officers," including Chief Hogan, Wilcox's appellate brief does not mention any alleged liability of Chief Hogan for failure to adequately train and supervise.

"law[ ]enforcement officer is justified in using deadly physical force" only when it is reasonably necessary to defend himself or a third person from the imminent use of deadly force. N.C. Gen. Stat. § 15A-401(d)(2). There is a question of fact as to whether Gonce could have timely moved from his position in front of his car to avoid any potential threat from the slow-approaching vehicle. Further, this Court has stated that evidence of "gross violations of generally accepted police practice and custom" contributes to the finding that officers acted contrary to their duty. *Prior v. Pruett*, 143 N.C. App. 612, 623-24, 550 S.E.2d 166, 174 (2001), *disc. review denied*, 355 N.C. 493, 563 S.E.2d 572 (2002). The APD "Use of Force Training Manual" provides that "[o]fficers are prohibited from discharging firearms when it is likely that an innocent person may be injured." APD training materials also provide that officers should not shoot at moving vehicles unless the public threat is serious and imminent. Because it was likely that the passenger would be hurt when officers fired into the moving vehicle, and because the vehicle did not pose an obvious imminent public threat (the vehicle was traveling at only 25 miles per hour and there was no evidence of pedestrian or vehicular traffic at Gonce's location at the time the vehicle approached him), we conclude that there is a genuine issue of fact as to whether Gonce acted contrary to his duty.

Furthermore, the evidence is sufficient to raise an issue of fact as to whether Gonce's actions were so wanton and reckless as to justify a finding of constructive intent to injure: Gonce fired six bullets into a slow-moving vehicle, knowing it was occupied by a passenger, and he did so despite having been called off the pursuit and despite the absence of a clear public threat. Thus, we conclude that the forecast of evidence is sufficient to raise a genuine issue of fact as to the existence of malice with respect to Gonce's actions.

The evidence before the trial court regarding officer Hogan's actions revealed the following: Hogan responded to the pursuit as a passenger in Intveld's patrol car. Despite having been called off the pursuit,[4] Hogan and Intveld arrived at the apartment complex where the pursuit was expected. Although he remembered several specific radio communications, Hogan stated in an interview with a State Bureau of Investigation agent that he did not remember any regarding the number of occupants in the pursued vehicle. By the time the vehi-

---

4. Early in the pursuit, Hogan and Intveld heard an APD sergeant's radio communication announcing that "there were enough cars involved in the chase and that the speeds were not excessive" and that Hogan, Intveld, and other responding officers "needed to cut back."

cle arrived at Hogan's position off to the side of the street, the vehicle had run over the "stop sticks" and was driving with a flat tire at 20 miles per hour. Hogan fired nine bullets as the vehicle approached. As the vehicle turned away from him, Hogan followed behind the vehicle, reloaded, and fired another eight bullets. In our view, this evidence is sufficient to raise a genuine issue of material fact as to whether Hogan's actions support a finding of malice.

First, the evidence tends to show that Hogan's actions were contrary to his duty. Hogan claimed he fired to defend himself from the oncoming vehicle. However, Hogan was positioned off the street, away from the path of the vehicle, and began firing when the vehicle was 75 feet away and approaching slowly. Further, although Hogan allegedly continued firing after the vehicle passed him because the threat had not ceased for the other officers, the evidence tends to show that Hogan was unaware of where the other officers were located. Considering the distance between Hogan and the vehicle, the vehicle's slow speed, and Hogan's position away from the street, a reasonable juror could conclude that Hogan's use of deadly force was contrary to his duty and was not justified. Accordingly, we conclude that there is a genuine issue of fact as to whether Hogan acted contrary to his duty.

Regarding the requirement of wantonness—that the act be done "needlessly, manifesting a reckless indifference to the rights of others," *In re Grad*, 312 N.C. at 313, 321 S.E.2d at 890-91—although Hogan claimed he does not remember radio transmissions describing the number of occupants in the vehicle, most officers involved in the incident knew there was a passenger. The evidence tends to show that Hogan heard the majority of the other radio communications, and, most importantly, there is no evidence indicating Hogan made any effort to ascertain the number of occupants in the vehicle. This evidence, viewed in the light most favorable to Wilcox, is sufficient to show that Hogan acted with a reckless indifference to Wilcox's rights.

Further, that same evidence is sufficient to raise an issue of fact as to whether Hogan's actions were so reckless as to justify a finding of intent to injure. Hogan fired 17 bullets into a slow-moving car with an unknown number of occupants. Not only did he fire upon the vehicle's approach, he also followed behind the vehicle and continued shooting. He made a second ammunition change, loading a third magazine, indicating that he would have fired more bullets had the vehicle stayed in sight. In our view, this evidence raises an issue of material fact as to whether Hogan's actions in firing at the vehicle

were so reckless and manifestly indifferent to Wilcox's rights that application of the constructive intent doctrine is justified. Therefore, we conclude that the forecast of evidence is sufficient to raise a genuine issue of fact as to the existence of malice with respect to Hogan's actions.

As for Intveld, the evidence before the trial court tended to show the following: Although Intveld had been called off the pursuit because the pursuit speeds "were not excessive," she drove to an area where the pursuit was expected. While she denied knowledge of a passenger in the vehicle at the time she fired her weapon, she "remembered hearing that [the vehicle] was occupied" over the radio. When Intveld arrived at the apartment complex, she hid behind bushes on the side of the street. As the vehicle passed at 20 miles per hour, she fired four bullets. In our view, this evidence, viewed in the light most favorable to Wilcox, is sufficient to raise a genuine issue of material fact regarding whether Intveld acted with malice.

As for the requirement that Inveld's actions must have been contrary to her duty, we note that Intveld admitted she did not feel that she was in danger of imminent force being used against her. While Intveld claimed she shot at the vehicle to defend other officers, she also admitted she was unsure where other officers were positioned. Further, the vehicle was moving at approximately 20 miles per hour and driving on a flat tire, which was about to fall off. In our view, this evidence is sufficient to establish a genuine issue of fact as to whether Intveld acted contrary to her duty.

Moreover, we think this evidence is sufficient to raise a genuine issue as to whether Intveld's actions were reckless in such a way as to support a finding of intent to injure. Although Intveld denied knowing there was a passenger in the vehicle, she "remembered hearing that it was occupied," and most officers involved in the incident knew there were two occupants. More importantly, there is no indication that Intveld believed there was only one person in the vehicle. In addition, Intveld fired from a hidden position, away from any danger posed by the vehicle, and she was unaware of whether any other officers were in danger. In our view, this evidence raises a genuine issue of material fact as to whether Intveld's actions were so reckless and manifestly indifferent to Wilcox's rights that they support the application of the constructive intent doctrine. As such, we conclude that the forecast of evidence is sufficient to raise a genuine issue of fact as to the existence of malice with respect to Intveld's involvement with the incident.

Based on the foregoing, we hold that the evidence before the trial court, viewed in the light most favorable to Wilcox, establishes that there are genuine issues of material fact regarding the applicability of the malice exception to public official immunity with respect to officers Gonce, Hogan, and Intveld.[5] Accordingly, the trial court properly denied these Defendants' motion for summary judgment on public official immunity grounds.

Nevertheless, Hogan and Intveld argue in the alternative that summary judgment should have been granted for them on the ground that Wilcox has failed to "show that her injuries or damages were proximately caused by [Hogan and Intveld's] use of force." We are unpersuaded.

In *McMillan v. Mahoney*, 99 N.C. App. 448, 393 S.E.2d 298 (1990), this Court recognized a "concurrent negligence" theory whereby one defendant may be liable for the negligent acts of another defendant if that first defendant "gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." *Id.* at 451, 393 S.E.2d at 300 (quoting Restatement (Second) of Torts § 876(b), (c) (1977)). In that case, we held that the following allegations were sufficient to support a concurrent negligence theory: "(i) that the [] defendants were shooting air rifles near the plaintiffs' home"; "(ii) that one of the [] defendants fired his air rifle in a negligent, careless and reckless manner"; and "(iii) as a result of the [] defendants shooting their air rifles, [the] plaintiff was struck." *Id.* at 453, 393 S.E.2d at 301. Similarly, in this case, the evidence before the trial court, viewed in the light most favorable to Wilcox and tending to show that Hogan and Intveld were shooting recklessly at the vehicle in which Wilcox was a passenger, is sufficient to allow a reasonable juror to find the existence of concurrent negligence. Accordingly, we conclude that summary judgment on this issue was properly denied.

In sum, we hold that the trial court did not err in denying summary judgment for officers Hogan, Intveld, and Gonce on Wilcox's claims against them in their individual capacities. However, with respect to any claims Wilcox has asserted against Chief Hogan in his

---

5. The Individual Defendants also argue that summary judgment should have been granted on Wilcox's punitive damages claims because the evidence does not "establish that the [Individual Defendants] acted with malice or willful or wanton conduct in discharging their firearms." We find this argument unconvincing with respect to Gonce, Hogan, and Intveld for all those reasons discussed above regarding the genuine issues of material fact as to the existence of malice. Thus, this argument is overruled.

**WILCOX v. CITY OF ASHEVILLE**

[222 N.C. App. 285 (2012)]

individual capacity, this case is remanded to the trial court for entry of summary judgment in Chief Hogan's favor.

### Wilcox's appeal

**[3]** Wilcox appeals from that portion of the trial court's order granting summary judgment for Defendants on Wilcox's state constitutional claims.[6] As we have concluded *supra* that Wilcox's claims against officers Gonce, Hogan, and Intveld in their individual capacities remain viable, the question is whether, despite that conclusion, Wilcox may still pursue her constitutional claims against Defendants. We conclude the answer is no.

Direct claims against the State arising under the North Carolina Constitution "[are] permitted *only* 'in the absence of an adequate state remedy,' " and where an adequate state remedy exists, those direct constitutional claims must be dismissed. *Davis v. Town of S. Pines*, 116 N.C. App. 663, 675-76, 449 S.E.2d 240, 247-48 (1994) (emphasis added) (quoting *Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992)), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). In *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 538 S.E.2d 601 (2000), *appeal dismissed*, *disc. review denied*, 353 N.C. 372, 547 S.E.2d 811 (2001), where the trial court granted summary judgment for an individual defendant on the plaintiff's individual-capacity state tort claims, this Court reversed the trial court, holding that the plaintiff was entitled to go to the jury on her state law tort claims and on the question of the applicability of public official immunity. *Id.* at 624-26, 538 S.E.2d at 615-16. In so holding, we stated as follows:

> As we have reversed the trial court's grant of summary judgment on plaintiff's state tort law claims against [the individual defendant], *there is an adequate state remedy* for plaintiff's alleged injury resulting from [the individual defendant's] conduct.

*Id.* at 632, 538 S.E.2d at 619 (emphasis added). Thus, this Court affirmed the dismissal of the plaintiff's state constitutional claims. *Id.* The clear implication from that holding is that leaving for the jury the question of the applicability of public official immunity to a plaintiff's

---

6. Wilcox's cross-appeal of the trial court's order is properly before this Court because, as discussed in Wilcox's brief, the order affects a substantial right of Wilcox's, *viz.*, the right to avoid two trials on the same issues. *See Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982) (The possibility of undergoing a second trial affects a substantial right where "the same issues are present in both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue.").

state tort law claims provides a plaintiff with an adequate state remedy such that any direct state constitutional claims should be dismissed.

As in *Glenn-Robinson*, in this case we have held that the applicability of public official immunity is a question for the jury and have allowed Wilcox's state law tort claims to proceed. Thus, we must conclude, as we did in *Glenn-Robinson*, that Wilcox has an adequate state remedy that precludes her state constitutional claims. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (holding that a panel of the Court of Appeals is bound by a prior decision of another panel of the same Court addressing the same question of law, but in a different case).

This conclusion, and our reading of *Glenn-Robinson*, comports with our Supreme Court's decision in *Craig*. There, our Supreme Court held that the existence of a state common law action that would generally serve as an "adequate remedy at state law" does not foreclose a plaintiff's claims arising directly under our State constitution where "governmental immunity stands as an absolute bar" to that state common law claim. *Craig*, 363 N.C. at 340, 678 S.E.2d at 355. Interpreting its prior holding that governmental immunity may not "stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the [North Carolina Constitution's] Declaration of Rights," *Corum*, 330 N.C. at 785-86, 413 S.E.2d at 291, the Supreme Court reasoned that a holding otherwise —that a common law claim absolutely barred by governmental immunity is an adequate remedy and warrants dismissal of state constitutional claims—would violate its holding in *Corum* and allow governmental immunity to effectively block a state constitutional claim. *Craig*, 363 N.C. at 338, 678 S.E.2d at 354. Thus, the Supreme Court concluded in *Craig* that a state common law claim absolutely barred by governmental immunity is not an adequate state remedy. *Id.* at 340, 678 S.E.2d at 355. In this case, because we have held that Wilcox's claims are not, as a matter of law, barred by public official immunity, the precise question is whether a state common law claim that *may*, at trial, ultimately fail based on a defense of public official immunity is an adequate remedy. The answer to this question can be found in the language used by the Supreme Court in *Craig*.

Our Supreme Court stated in *Craig* that an adequate remedy must give the plaintiff "at least the *opportunity* to enter the courthouse doors and present his claim" and must "provide the *possibility* of relief under the circumstances." *Id.* at 339-40, 678 S.E.2d at 355 (emphasis added). Thus, adequacy is found not in success, but in

chance. Further, when discussing the *inadequacy* of the remedy in that case, the Supreme Court used the language of impossibility, noting that governmental immunity stood as "an absolute bar" to the plaintiff's claim, "entirely" and "automatically" precluded recovery, and made relief "impossible." *Id.* at 340-41, 678 S.E.2d at 355-56. As we have concluded that there is a genuine issue of material fact as to the applicability of public official immunity, it follows that Wilcox still has a chance to obtain relief and that her claims against the Individual Defendants in their individual capacities are not absolutely, entirely, or automatically precluded. Therefore, because the Supreme Court's decision in *Craig* indicates that such a possibility warrants a finding of adequacy, we conclude that Wilcox's claims against the Individual Defendants in their individual capacities serve as an adequate remedy.[7]

Furthermore, like governmental immunity, public official immunity is immunity from suit, not just from liability. *Blevins v. Denny*, 114 N.C. App. 766, 769, 443 S.E.2d 354, 355 (1994). As such, like governmental immunity, public official immunity is "effectively lost" when that public official is forced to go to trial. *Id.* (quoting *Corum v. Univ. of N.C.*, 97 N.C. App. 527, 531-32, 389 S.E.2d 596, 598 (1990), *aff'd in part; rev'd in part on other grounds, Corum, supra*). So while the Individual Defendants have not lost their ability to assert the immunity defense at trial, the normal effect of the immunity — to deny a plaintiff the opportunity to present her claim — is lost. As this "effectively lost" immunity defense is not operating to prevent Wilcox from presenting her claim, but only as a usual affirmative defense, it cannot be said that the Individual Defendants' assertion of the public official immunity defense entirely precludes suit and renders Wilcox's common law claims inadequate. *Cf. Craig*, 363 N.C. at 340, 678 S.E.2d at 355 (Adequacy does not depend on whether "plaintiff will win other pretrial motions, *defeat affirmative defenses, or ultimately succeed on the merits of his case.*" (emphasis added)).

Although, as concluded *supra*, Wilcox has a remedy alternative to her state constitutional claims in that she may pursue her common law claims against the Individual Defendants in their individual

---

7. We note that in *Craig*, the plaintiff also filed individual-capacity claims against a defendant, which were dismissed early in the proceedings (based on public official immunity, according to the appellate briefs in that case) and were not appealed by the plaintiff. Though this fact raises a question as to the adequacy of an individual-capacity state common law claim preliminarily dismissed (and potentially absolutely precluded) on grounds of public official immunity, it does not alter our conclusion in this case, as we find Wilcox's *possibility* of relief here dispositive.

capacities, Wilcox contends that this remedy is inadequate because her claims under the state constitution—which she contends seek redress of the violation of her right "to be free from seizure by the use of excessive or unreasonable force"—are different from her common law causes of action in that the only individual-capacity claims she may assert are "subjective bad motive" claims for intentional torts. This contention is premised on Wilcox's misapprehension of the effect of public official immunity on her individual-capacity claims, specifically, that the Individual Defendants' assertion of public official immunity leaves Wilcox "[unable] to sue the [Individual Defendants] for negligent use of unreasonable force."

Although this Court has previously stated that, pursuant to the public official immunity doctrine, public officials cannot be held liable for "mere negligence," see, e.g., Hare v. Butler, 99 N.C. App. 693, 700, 394 S.E.2d 231, 236, disc. review denied, 327 N.C. 634, 399 S.E.2d 121 (1990), that holding simply means that "a public official sued individually is not liable for 'mere negligence'—because such negligence standing alone, is insufficient to support the 'piercing' [] of the cloak of official immunity." Epps, 122 N.C. App. 206-07, 468 S.E.2d at 852-53 (emphasis in original). However, once the "cloak of official immunity" has been pierced—by a showing that the defendant acted maliciously, corruptly, or beyond his duty—the defendant "is not entitled to [immunity] protection on account of his office" and he "is then liable for simple negligence" and "subject to the standard liabilities of a tortfeasor." Id. at 205-06, 468 S.E.2d at 852. Thus, Wilcox is incorrect regarding her inability to sue the Individual Defendants for negligence; so long as she can also satisfy her burden of showing that the Individual Defendants acted maliciously, Wilcox can assert claims against the Individual Defendants in their individual capacities for negligent use of unreasonable force. See id.; see also Prior, 143 N.C. App. at 619, 550 S.E.2d at 171 (noting that a plaintiff's claims against law enforcement officers for negligent use of excessive force can be maintained against officers in their individual capacities if that plaintiff "brings forth evidence sufficient to 'pierce the cloak of official immunity' ").

Wilcox goes on to argue, however, that such a remedy is not an adequate alternative to her state constitutional claims because it requires her to prove, in addition to the elements of her common law tort claim, that the Individual Defendants acted with a "subjective bad motive," or malice. This heightened burden, Wilcox argues, warrants a conclusion that her remedy is inadequate. We disagree.

Initially, we note that the imposition of an additional "element" to be proved by Wilcox does not impact her chance or opportunity to obtain relief. And even if, as Wilcox suggests, that imposition makes it less likely that Wilcox's claims will succeed, it does not make relief an impossibility. Indeed, we have already held that summary judgment is inappropriate because there is a genuine issue of material fact as to whether malice exists in this case, which holding itself implicitly indicates that there is at least a possibility that a jury could find in Wilcox's favor on the issue. *See Sloan v. Miller Bldg. Corp.*, 119 N.C. App. 162, 165-66, 458 S.E.2d 30, 32 (the inquiry on summary judgment "unavoidably asks . . . whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it" (bracket and internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L. Ed. 2d 202 (1986))), *disc. review denied*, 341 N.C. 652, 462 S.E.2d 517 (1995). Further, and more importantly, this Court has already rejected a similar argument in a similar case, holding that a remedy is still an adequate alternative to state constitutional claims where the plaintiff must show that the defendant acted with malice, despite the fact that "such a showing would require more evidence." *Rousselo v. Starling*, 128 N.C. App. 439, 448-49, 495 S.E.2d 725, 731-32, *disc. review denied*, 348 N.C. 74, 505 S.E.2d 876 (1998). As we are bound by this previous decision, we must conclude that Wilcox's remedy in this case is adequate despite the fact that she must prove malice in addition to the elements of her common law cause of action for negligent use of excessive force.

Based on the foregoing, we hold that Wilcox has an adequate state remedy such that her claims arising directly under the North Carolina Constitution were properly dismissed by the trial court. Thus, the trial court did not err in granting Defendants' motion for summary judgment on Wilcox's state constitutional claims.

The trial court's order granting summary judgment for Defendants on Wilcox's state constitutional claims is affirmed. The trial court's order denying summary judgment for Defendants on Wilcox's tort claims against officers Gonce, Hogan, and Intveld in their individual capacities is affirmed. The trial court's order denying summary judgment on Wilcox's tort claims against Chief Hogan in his individual capacity is reversed, and we remand that portion of the case to the trial court for entry of summary judgment for Chief Hogan.

AFFIRMED in part; REVERSED and REMANDED in part.

Judge THIGPEN concurs.

Judge BRYANT concurs in the result.