HUNTER, Robert C., Judge.
*258 Officer D. Funk (“defendant” or “Officer Funk”) and the Town of Chapel Hill (“the Town”) (collectively “defendants”) appeal from an order denying in part their motion for summary judgment as to the claim of plaintiff Charles D. Brown for false imprisonment. Only Officer Funk’s appeal from the trial court’s denial of his motion for summary judgment based on public official immunity is properly before us. Because plaintiff failed to forecast evidence that Officer Funk acted with malice, we reverse.
Background
This lawsuit arises out of the stop and detention of plaintiff by Officer Funk and other officers of the Chapel Hill Police Department (“CHPD”) on the night of 1 June 2009. Plaintiff, a black male, is the owner of Precise Cuts & Styles Barber Shop located at 136 E. Rosemary Street in Chapel Hill, North Carolina.
According to plaintiff’s verified complaint and deposition, on 1 June 2009, after closing his shop at 10:00 p.m., plaintiff stayed late to do some cleaning and remodeling. When plaintiff was finished, around 11:25 p.m., he locked the shop’s front door and walked west on Rosemary Street towards his fiancé’s house in Carrboro.
At around 11:35 p.m., plaintiff was walking along the north side of West Rosemary Street when he saw two officers in police cars parked in the convenience store lot on the south side of the street across from Breadman’s Restaurant. One of the officers pulled out on Rosemary Street and into an empty lot on the south side of the street. As he walked past the officer, plaintiff raised his right arm across his face, scratching the left side of his face with his right hand. Plaintiff continued walking on the north side of the street past the Breadman’s parking lot, and heard someone say, “Stop.” Not realizing that the person was talking to him, plaintiff continued walking.
Plaintiff then heard the same voice again, this time directly behind him, saying, “I said stop!” Plaintiff turned and saw Officer Funk with his hand on his weapon about five feet away. Plaintiff asked, “Stop for what? What did I do?” Officer Funk responded, “[Y]ou are under arrest, Mr. Farrington [sic]” as he grabbed plaintiff’s hand, spun him around, pushed him against the back of a second police car that had just pulled in front of plaintiff. Officer Funk pulled plaintiff’s other arm behind his back and tightly fastened the handcuffs on plaintiff’s wrists, inflicting pain.
Plaintiff informed the officers that he was not Cuman Fearrington (“Mr. Fearrington”) and that his actual name was Charles Brown. When *259 plaintiff did not receive any response from the officers, he asked, “[A]re you sure you want to do this? My name is not Mr. Farrington [sic].” Again, the officers did not respond. Instead, Officer Funk pushed plaintiff against the trunk of the police car and patted plaintiff down, checking for weapons. Plaintiff told Officer Funk to look in his pants pocket for his ID cards. Defendant pulled out a set of cards held together with a rubber band, flipped through them, and threw them on the trunk of the police car.
When Officer Funk asked plaintiff from where he was walking, plaintiff told him that he had just left work. Officer Funk questioned plaintiff: “From work at this time of night?” Plaintiff explained that he owned a barber shop on Rosemary Street. Officer Funk replied in a sarcastic and incredulous tone: “Oh? You own a business?” Plaintiff responded, “If I was white, this would not be happening.” Officer Funk then asked whether plaintiff would “feel better” if he called a black officer. Because plaintiff again thought Officer Funk was being sarcastic, he replied, “No.”
In the meantime, five police cars gathered, and several cars and pedestrians slowed or stopped to observe what was happening. A black police officer, Officer D. Williams, asked plaintiff, “If I had pulled you, would you feel better?” Plaintiff then heard Officer Williams say to the other officers, “I hate the ones like him.”
At 12:14 a.m., Officer Funk’s partner, Officer Castro, called Orange County Communications to verify the information on plaintiff’s identification card. When the operator confirmed plaintiff’s identification, Officer Castro asked, “[D]oes he have anything on the NCIC? Or anything on other surrounding indices?” The operator replied, “I don’t show anything in NCIC but I’m going to check surrounding .. . I’ll have to send a message ... it will take a few . . . .” Eventually the operator responded that there was “no positive response,” and the 16-minute call ended at 12:30 a.m. A few minutes later, Officer Funk removed plaintiff’s handcuffs, and he and the other officers drove off without apologizing or saying anything else to plaintiff.
The following day, plaintiff and his fiancé drove to the CHPD to file a complaint and ask for a photograph and description of Mr. Fearrington. They met with Lieutenant Bradley who told them he did not have time to look up the requested information and that Officer Funk was in training and could not meet with them either. Because of what plaintiff and his fiancé perceived as a discriminatory and disrespectful attitude from Lt. Bradley, they did not file a complaint that day, fearing it would be dismissed with the same attitude.
*260 Instead, on 16 June 2009, plaintiff reported the incident to the local NAACP, who asked the CHPD for the incident report of plaintiffs arrest. Plaintiff was provided the incident report on 24 June 2009. Defendants admitted that the report was not created until requested by the NAACP, two weeks after the incident. The report is unsigned by Officer Funk and states that at 12:17 a.m. on 2 June 2009 the “State of North Carolina” was the victim of a “Suspicious Person” on the 300 Block of West Rosemary Street.
The report lists Officers Castro and Sabanosh as “others involved” in the incident. Officer Sabanosh does not, however, appear anywhere on the radio log from that night. Although the radio log indicates that Officer Taylor was present at the scene of the incident, the incident report does not mention him. Officer Williams, the black officer, is not mentioned in either the radio log or on the incident report.
On 2 June 2011, plaintiff filed suit against the Town and Officer Funk in his official and individual capacity for assault, false imprisonment, and violation of plaintiffs constitutional rights under Article I, Section 20, and Article I, Section 19, of the North Carolina Constitution. Plaintiff pled that the Town had waived sovereign immunity by the purchase of liability insurance. In its response, the Town admitted that it “participates in a local government risk pool, which provides certain coverage to the Town with respect to Plaintiffs claims.”
On 13 August 2012, defendants filed a motion for summary judgment, arguing that (1) plaintiff had not and could not establish facts to support any of his causes of action, (2) Officer Funk was entitled to public official immunity in his individual capacity, (3) the claims against Officer Funk in his official capacity are duplicative of the claims against the Town, and (4) the claims directly under the North Carolina Constitution should be dismissed because plaintiff had adequate state remedies available. In support of the motion for summary judgment, defendants submitted an affidavit from Officer Funk.
According to Officer Funk’s affidavit, he did not see plaintiff until 12:14 a.m. — he drove to the Keys Food Mart, where plaintiff first saw the two officers parked, after responding to a loud music complaint on Church Street at 12:04 a.m. Officer Funk first saw plaintiff walking west on the south side of the road as defendant was turning right onto Rosemary. As he made his turn, Officer Funk saw plaintiff look up in his direction and immediately put his right hand in front of his face. Plaintiff continued to cover his face with his hand, moving his hand slowly across his face as Officer Funk drove by to keep his face from view. After plaintiff passed Officer Funk, plaintiff crossed from the south side *261 to the north side of the street just before reaching Officer Castro’s patrol car in the Keys Food Mart lot. As he crossed the street, he switched from using his right hand to cover his face to using his left hand so that Officer Castro could not see his face. Officer Funk claimed that plaintiff hid his face continuously.
Based on Officer Funk’s belief that plaintiff was intentionally hiding his face and it being after midnight in a high call volume area of town, Officer Funk decided to investigate further. He turned his vehicle around to get a closer look at plaintiff, and, when he got close enough, “the individual resembled a subject [he] knew had active local arrest warrants— Cuman Fearrington.” In addition to the arrest warrants, Officer Funk noted that Mr. Fearrington had evaded arrest in the “Central Business District” of Chapel Hill earlier that day. Officer Funk, believing that plaintiff was Mr. Fearrington, thought that plaintiff was intentionally covering his face based on those outstanding arrest warrants.
According to Officer Funk, he got out of his police car and asked plaintiff if he could speak to him, but plaintiff ignored him and increased his pace. Officer Funk denied placing his hand on his weapon or threatening force. Officer Funk then told plaintiff to stop, repeating his order several times before plaintiff turned around and asked, “Why do I have to stop, just because you say so?” At that point, Officer Castro had pulled his vehicle in front of plaintiff, and it appeared to Officer Funk that plaintiff was attempting to walk around Officer Castro’s vehicle. Defendant also claimed that he believed that plaintiff might run away into an open alley nearby Concerned that plaintiff may attempt to run, Officer Funk placed his hands on plaintiff’s left arm, and plaintiff jerked his arm away. Officer Funk placed plaintiff in handcuffs with the assistance of another officer; he claimed plaintiff continued to struggle during the encounter.
Officer Funk’s account of what happened after he handcuffed plaintiff also differs from plaintiff’s account. Officer Funk stated that while he was patting plaintiff down for weapons, he asked plaintiff for his identification, and plaintiff told him he did not have any. Officer Funk claims that he asked plaintiff more than three times for his identification and that each time plaintiff gave the correct name but the wrong date of birth, all while denying that he had identification on his person. Officer Funk also denies that any of the comments he made to plaintiff regarding plaintiff working late and owning a business were intended to express skepticism or to disparage plaintiff.
Officer Funk attributes the delay in the verification of plaintiff’s identification to the fact that communications originally ran an incorrect birth date into the database. As soon as communications ran the correct *262 date of birth, they were able to confirm plaintiffs identity. Officer Funk claims that plaintiff was only in investigative detention for 16 minutes, from 12:14 a.m. to 12:30 a.m.
Attached to Officer Funk’s affidavit was the radio log for that night, which shows the self-reported status of the CHPD officers. The log stated that Officer Funk was dispatched to 500 Umstead Road at 11:32 p.m., and he arrived there at 11:42 p.m. At 11:50 p.m., Officer Funk radioed dispatch that he was available. At 11:54, he was dispatched to a loud noise complaint at Church Street and radioed that he was again available at 12:04 a.m. The log does not show that Officer Funk ever radioed that he had arrived on the scene at Church street, as it shows for the other locations to which he was dispatched that night. Finally, the log shows that Officer Funk arrived at Breadman’s at 12:15 a.m. and radioed that he was available at 12:32 a.m. Defendants also provided documentation of the call between Officer Castro and Orange County Communications, which shows that the call began at 12:14 a.m. and ended at 12:30 a.m.
Judge Carl Fox heard defendants’ motion for summary judgment and, on 18 September 2012, Judge Fox entered an order allowing defendants’ motion as to plaintiff’s constitutional claims and his claim for assault. Judge Fox denied the motion as to plaintiff’s claim for false imprisonment as to all defendants. Defendants appealed to this Court.
Grounds for Appeal
Preliminarily, we note that Judge Fox’s order is interlocutory and, generally, an order denying a motion for summary judgment is not immediately appealable. Schmidt v. Breeden, 134 N.C. App. 248, 251, 517 S.E.2d 171, 174 (1999). “An interlocutory appeal is ordinarily permissible only if (1) the trial court certified the order under Rule 54(b) of the Rules of Civil Procedure, or (2) the order affects a substantial right that would be lost without immediate review.” Boyd v. Robeson Cnty., 169 N.C. App. 460, 464, 621 S.E.2d 1, 4 (2005).
Officer Funk contends that the trial court erred in denying his motion for summary judgment based on public official immunity. This Court has held that a public official’s right to be’immune from suit is a substantial right justifying an interlocutory appeal. See Free Spirit Aviation, Inc. v. Rutherford Airport Auth., 191 N.C. App. 581, 583, 664 S.E.2d 8, 10 (2008). Therefore, defendant’s appeal of the denial of the motion for summary judgment based on public official immunity is properly before us.
Additionally, both defendant and the Town have sought immediate review of the denial of their motion for summary judgment on several *263 non-immunity related grounds. Defendants argue that “it is well established that this Court will, in the interests of judicial economy, entertain the entirety of an appeal involving an issue which affects a substantial right, though the remaining issues on appeal do' not, in and of themselves, affect such a right.”
Defendants cite Block v. Cnty. of Person, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (addressing the defendants’ argument that the complaint was insufficient to sue the defendants in their individual capacity); Houpe v. City of Statesville, 128 N.C. App. 334, 340, 497 S.E.2d 82, 87 (1998) (addressing “in our discretion” the defendant’s non-immunity related arguments “where it would be in the interests of judicial economy to do so”); Smith v. Phillips, 117 N.C. App. 378, 384, 451 S.E.2d 309, 314 (1994) (holding that “in the interest of judicial economy, we exercise our. discretionary power to suspend the rules pertaining to interlocutory appeals and address the remainder of [the] defendants’ appeal”).
However, this Court has noted that in cases where we have exercised our discretion to also review non-immunity issues, the Court has neither held “that non-immunity-related issues would always be considered on the merits in the course of deciding an immunity-related interlocutory appeal” nor “recognize [d] the existence of a substantial right to have multiple issues addressed in the course of an immunity-related appeal. On the contrary, in most immunity-related interlocutory appeals, we have declined requests that we consider additional non-immunity-related issues on the merits.” See Bynum v. Wilson Cnty.,_N.C. App._,_, 746 S.E.2d 296, 300, disc. review dismissed,_N.C._, 748 S.E.2d 559 (2013). In this case, after considering all of the circumstances, we decline to exercise our discretion to consider the merits of defendants’ non-immunity issues on appeal and dismiss defendants’ appeal with respect to those issues as interlocutory.
Arguments
The sole issue properly before us is whether Judge Fox erred by denying Officer Funk’s motion for summary judgment based on public official immunity.
Summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.” N.C. Gen. Stat. § 1A-1, Rule 56 (2013). When deciding the motion, “ ‘the trial judge must view the presented evidence in a light most favorable to the nonmoving party.’ ” In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d *264 572, 576 (2008) (quoting Dalton v. Camp, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)). Additionally, “ ‘[a]ll facts asserted by the [nonmoving] party are taken as true and their inferences must be viewed in the light most favorable to that party.’ ” Woods v. Mangum, 200 N.C. App. 1, 5, 682 S.E.2d 435, 438 (2009) (quoting Dobson v. Harris, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)), aff’d per curiam, 363 N.C. 827, 689 S.E.2d 858 (2010). This Court reviews an appeal from summary judgment de novo. Id. In applying Rule 56, this Court has held that “[sjummary judgment is appropriate ... if the non-moving party is unable to overcome an affirmative defense offered by the moving party.” Free Spirit Aviation, 191 N.C. App. at 583, 664 S.E.2d at 10 (quoting Griffith v. Glen Wood Co., Inc., 184 N.C. App. 206, 210, 646 S.E.2d 550, 554 (2007)).
I. Public Official Immunity - Malice Exception
As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability. Thus, a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt.
Wilcox v. City of Asheville,_N.C. App._,_,730 S.E.2d 226, 230 (2012) (internal citations omitted), disc. review denied, 366 N.C. 574, 738 S.E.2d 363 (2013). Here, the only exception to public official immunity plaintiff argued on appeal is the malice exception. Specifically, plaintiff has not cited any authority separately addressing the corruption exception to the public official immunity doctrine or provided any analysis as to this in his brief. Therefore, we will only address the malice exception. See Wilkerson v. Duke Univ.,_N.C. App._,_, 748 S.E.2d 154, 161 (2013) (noting that arguments not raised on appeal are “deemed abandoned”).
This Court has noted, with regard to the malice exception, that:
As for the first question, the most commonly-cited definition of malice in this context is from our Supreme Court’s decision in In re Grad v. Kaasa, which states that “[a] defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.” 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). Thus, elementally, a malicious act is an act (1) done wantonly, (2) contrary to the actor’s duty, and (3) intended to be injurious to another.
*265 Wilcox,_N.C. App. at__, 730 S.E.2d at 230. Thus, the only issue is whether plaintiff sufficiently forecasted evidence for each element of malice. See Schlossberg v. Coins, 141 N.C. App. 436, 446, 540 S.E.2d 49, 56 (2000) (“[T]o survive [a] police officer[‘s] motion for summary judgment on the issue of their individual liability, [plaintiff] must have alleged and forecasted evidence demonstrating the officers acted corruptly or with malice.”). If so, there is a genuine issue of material fact as to whether Officer Funk is entitled to the defense of public official immunity, and the trial court did not err in denying summary judgment. However, if not, then Officer Funk would be immune from civil liability.
A. Contrary to Duty
The first element of malice is whether Officer Funk acted contrary to his duty when he detained plaintiff. To determine this issue, we must decide whether plaintiff’s seizure constituted an investigatory stop or an arrest. See State v. Carrouthers, 200 N.C. App. 415, 419, 683 S.E.2d 781, 784 (2009) (“Generally, a person can be ‘seized’ in two ways for the purposes of a Fourth Amendment analysis: by arrest or by investigatory stop.”). Although police officers are authorized during an investigatory stop to take measures to protect their personal safety and maintain status quo, State v. Campbell, 188 N.C. App. 701, 708-709, 656 S.E.2d 721, 727 (2008), this Court has noted that “[w]here the duration or nature of the intrusion exceeds the permissible scope, a court may determine that the seizure may evolve into a defacto arrest... even in the absence of a formal arrest,” State v. Milien, 144 N.C. App. 335, 340, 548 S.E.2d 768, 772 (2001).
Here, it is undisputed that Officer Funk immediately handcuffed plaintiff once he reached him without asking plaintiff to identify himself or providing any explanation for why plaintiff was being stopped. Furthermore, plaintiff claimed that Officer Funk immediately told him that he was under arrest. While Officer Funk claims that he handcuffed plaintiff during an investigatory stop to keep him from fleeing, Officer Funk admitted that he mistakenly believed that plaintiff was Mr. Fearrington, a person whom arrest warrants had been issued against. However, once plaintiff’s true identity was established, Officer Punk released plaintiff. For purposes of this appeal, because “[Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence^]” State v. Styles, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (internal quotation marks omitted), we conclude that plaintiff’s seizure constituted a defacto arrest and not, as defendants contend, an investigatory stop. Thus, Officer Funk must have had probable cause; otherwise, *266 he would be acting contrary to duty. See Milien, 144 N.C. App. at 339, 548 S.E.2d at 771 (noting that “a defacto arrest... must be justified by probable cause”).
In the present case, it is undisputed that Officer Funk had probable cause to arrest Mr. Fearrington. “[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.” Hill v. California, 401 U.S. 797, 802, 28 L. Ed. 2d 484, 489 (1971). Thus, the issue is whether Officer Funk’s mistake was reasonable based on the totality of the circumstances. Subjective good-faith belief is not sufficient on its own; instead, the Supreme Court noted that “sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment.” Id. at 804, 28 L. Ed. 2d at 490. Along these lines, this Court, in Robinson v. City of Winston-Salem, 34 N.C. App. 401, 406-07, 238 S.E.2d 628, 631 (1977), noted that with regard to civil claims for false imprisonment against police officers who arrest the wrong person: “liability for false imprisonment will be imposed only when the arresting officer has failed to use reasonable diligence to determine that the party arrested was actually the person described in the warrant.” This concept was reinforced by-this Court in State v. Lynch, 94 N.C. App. 330, 333, 380 S.E.2d 397, 399 (1989), which noted, relying on Robinson, that: even though a police officer reasonably mistakenly arrests the wrong person, the officer must still take “reasonable steps to confirm the identity of the individual under suspicion.”
With regard to the reasonableness analysis required by Hill, the Fourth Circuit has noted that
the qualified immunity reasonableness determination is based on evidence reasonably available to the police officer and in fight of any exigencies present. And importantly, this inquiry must not result in a second-guessing of the officer’s actions with the benefit of 20/20 hindsight. This is so because officers executing a warrant are not required to investigate independently every claim of innocence, or to be absolutely certain that the person arrested is the person identified in the warrant. Instead, sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. Mistaken identity errors, of course, will inevitably occur from time to time, but the law sensibly recognizes that not every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person... automatically constitutes *267 a constitutional violation for which a remedy may be sought under . . . [section] 1983. In sum officers who mistakenly arrest the wrong person are immune from § 1983 liability unless they act in an objectively unreasonable manner in the circumstances, as for example, in failing to investigate readily available exculpatory evidence.
Brown v. Wiita, 7 F. App’x 275, 278-79 (4th Cir. 2001) (alteration in original) (internal quotation marks and citations omitted).
Here, under Hill and Robinson, the evidence taken in a light most favorable to plaintiff establishes that Officer Funk’s mistaken belief that plaintiff was Mr. Fearrington was reasonable and that Officer Funk used reasonable diligence to determine whether plaintiff was who he claimed to be. With regard to Officer Funk’s mistaken belief, the undisputed evidence, as established by Officer Funk’s affidavit attached to the motion for summary judgment, shows that Officer Funk knew Mr. Fearrington had active local arrest warrants out on him and that Mr. Fearrington had evaded arrest earlier that day in Chapel Hill. After telling plaintiff to stop, plaintiff continued to walk away from Officer Funk. Once plaintiff stopped, according to his own complaint, Officer Funk stated: “You are under arrest, Mr. Fearrington.” Photos of both Mr. Fearrington and plaintiff were attached to the affidavit, and the individuals appear similar.
Under the totality of the circumstances, Officer Funk’s mistaken belief was reasonable. Plaintiff admitted in his complaint that he did not stop the first time Officer Funk told him to. Once he did, Officer Funk approached him and called him “Mr. Fearrington”; thus, even though Officer Funk was only a few feet away, he still held on to his mistaken belief that plaintiff was Mr. Fearrington. Furthermore, even though there are some differences in the appearance of plaintiff and Mr. Fearrington, the encounter took place late at night. Thus, under the totality of the circumstances, plaintiff has failed to forecast evidence that Officer Funk’s mistake was unreasonable. Finally, although plaintiff immediately told Officer Funk that he was not Mr. Fearrington, “aliases and false identifications are not uncommon,” Hill, 401 U.S. at 803, 28 L. Ed. 2d at 489. Accordingly, it was reasonable for Officer Funk to not believe plaintiff’s claim until he saw plaintiff’s identification and was able to verify it through NCIC.
We find Lynch provides guidance. In Lynch, a police officer mistakenly stopped the defendant, believing the defendant was someone for whom arrest warrants had been issued. Id. at 333, 380 S.E.2d at 399. *268 Relying on Hill, this Court held that because “[pictures of [the] defendant and the other individual show that they are sufficiently similar in appearance that the officer’s mistake was not unreasonable,” the officer had “a reasonable basis to stop [the] defendant and require him to identify himself.” Id. Then, after the defendant attempted to flee, officers were then authorized to arrest the defendant in order to “ascertain his identity.” Id.
Initially, we note that since Lynch involved an investigatory stop that transformed into a formal arrest and in the present case plaintiffs seizure constituted a defacto arrest, Lynch’s guidance is limited to showing how the Court determines the “reasonableness” of a mistaken belief. Like Lynch, pictures introduced at summary judgment show that plaintiff and Mr. Fearrington are sufficiently similar in appearance. Based on the circumstances noted above in addition to the similar photographs, Officer Funk’s misidentification was understandable and reasonable.
Furthermore, plaintiff has failed to forecast any evidence that Officer Funk did not use due diligence in ascertaining plaintiff’s true identity. While it is undeniable that there was some delay given the mix-up in plaintiff’s birthdate, the call log indicates that Officer Funk was dispatched to the location at 12:14 a.m. and that he was available at approximately 12:32 a.m. Thus, from the time Officer Funk noticed plaintiff until the time he was released was approximately 18 minutes. Given the mix-up in plaintiff’s birthdate, the evidence shows that Officer Funk used reasonable diligence to ascertain plaintiff’s identity. Plaintiff has offered no evidence to the contrary as to the length of this detention nor any evidence that Officer Funk did not act diligently. Accordingly, under Robinson, plaintiff has failed to forecast evidence to refute Officer Funk’s claim that he diligently attempted to verify plaintiff’s identity.
While the dissent contends that the rule of law in Robinson requires that an officer use reasonable diligence to ascertain the person’s identity before arresting him, given the differences between how the plaintiff in Robinson and how plaintiff in the present case were arrested, we do not believe that the rule of law in Robinson would not be satisfied in the present case. In Robinson, the police officers went to a house to serve a warrant on the plaintiff. Id. at 403, 238 S.E.2d at 630. Here, Officer Funk was not specifically dispatched to arrest plaintiff; instead, he saw plaintiff walking on the street and believed him to be Mr. Fearrington, a man whom Officer Funk “knew” and who had evaded arrest earlier that same day. Thus, Officer Funk thought that plaintiff was on the verge of running. Consequently, he did not have the same type of time prior to arresting plaintiff to exercise due diligence as the officers did *269 in Robinson. However, in totality, Officer Funk exercised due diligence by asking plaintiff to stop, which plaintiff refused to do, and immediately running plaintiff’s name through NCIC to see if he was, in fact, who he claimed to be. Consequently, Officer Funk “use[d] reasonable diligence[,]” Robinson, 34 N.C. App. at 406-407, 238 S.E.2d at 631, to determine whether plaintiff was Mr. Fearrington under these circumstances.
In summary, under Hill and Robinson, plaintiff has failed to forecast any evidence, besides mere unsupported allegations, that Officer Funk acted contrary to his duty; specifically, plaintiff offered no evidence showing that Officer Funk’s mistaken belief that plaintiff was Mr. Fearrington was unreasonable, as set out in Lynch, or that Officer Funk did not act diligently in determining plaintiff’s true identity.
B. Wantonness and Intent to Injure
“An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.” Yancey v. Lea, 354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001). In order to establish that Officer Funk acted with intent to injure, this Court has noted that:
a plaintiff may not satisfy her burden of proving that an official’s acts were malicious through allegations and evidence of mere reckless indifference. Rather, as discussed supra, the plaintiff must show at least that the officer’s actions were so reckless or so manifestly indifferent to the consequences... as to justify a finding of [willfulness] and wantonness equivalent in spirit to an actual intent
Wilcox,_N.C. App. at_, 730 S.E.2d at 232 (internal citations and quotation marks omitted).
According to plaintiff’s complaint, Officer Funk “roughly pulled” plaintiff’s arm behind his back in an attempt to “inflict great pain” while he was handcuffing plaintiff. After plaintiff claimed that he was not Mr. Fearrington, Officer Funk kept plaintiff in handcuffs while his fellow officers checked plaintiffs identification card. At one point, Officer Funk sarcastically asked plaintiff: “Oh? You own a business?” When plaintiff told Officer Funk that this would not be happening if he were white, Officer Funk asked plaintiff if it would make him feel better if he called a black officer. After NCIC verified plaintiff’s identity, Officer Funk released plaintiff without apologizing. At the hearing, plaintiff’s counsel attempted to cast the situation as a result of “race discrimination” based on the history and “general situation” of how black people axe treated by Chapel Hill police.
*270 Viewing these allegations in a light most favorable to plaintiff, the evidence tends to show that Officer Funk may have acted disrespectfully and unprofessionally while attempting to verify plaintiffs identity or even refusing to apologize after the incident. However, once plaintiff’s identity was confirmed through NCIC, Officer Funk released plaintiff. Furthermore, there is nothing that establishes a reckless indifference to plaintiff’s rights during the encounter. As discussed, Officer Funk’s de facto arrest of plaintiff was based on his mistaken, yet reasonable, belief that he was Mr. Fearrington; accordingly, under Hill, his defacto arrest was “valid.” In order to verify plaintiff’s claim that he was not Mr. Fearrington, Officer Funk, along with other Chapel Hill police officers, ran plaintiff’s name through central command. As with routine traffic stops, an officer “may request a driver’s license and vehicle registration, run a computer check, and issue a citation.” United States v. Green, 740 F.3d 275, 280 (4th Cir. 2014); see also State v. McClendon, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999) (“After a lawful stop, an officer may ask the detainee questions in order to obtain information confirming or dispelling the officer’s suspicions.”). Here, since the basis for the initial defacto arrest of plaintiff was valid and it was not unreasonable to continue detaining plaintiff under the circumstances after his identity was verified, Officer Funk was entitled to run plaintiff’s name to determine whether he had any outstanding warrants.
Moreover, although plaintiff alleges that Officer Funk “roughly” put him in handcuffs and tried to inflict great pain, plaintiff has failed to allege any facts that Officer Funk’s conduct was wanton or done with a reckless indifference to plaintiff’s rights as compared to what a reasonable police officer would do in Officer Funk’s position. Believing plaintiff was someone else who had arrest warrants issued against him and had evaded police earlier that day, Officer Funk seized plaintiff while confirming his belief. It is undeniable that the act of being handcuffed could hardly be characterized as anything but uncomfortable and, likely, painful. However, plaintiff has failed to plead any facts to suggest that Officer Funk took additional steps while handcuffing plaintiff to make the experience any more painful, besides unsupported allegations that Officer Funk “intended” to inflict pain. Without more, plaintiff’s bare contention that the handcuffs were painful is not enough to rise to the level of wanton or show an intent to injure.
Consequently, plaintiff has failed to produce any evidence showing that Officer Funk acted with a reckless indifference to plaintiff’s rights. Besides vague allegations that Officer Funk spoke to plaintiff sarcastically and treated him disrespectfully — what plaintiff’s counsel classified *271 as “arrogant and chauvinist talk” at the motion hearing — and unsupported claims that Officer Funk handcuffed him in such a way as to cause him “great pain,” plaintiff has failed to forecast any evidence that Officer Funk acted wantonly or with an intent to injure.
In summary, while the initial burden was on Officer Funk to show the absence of any genuine issue of material fact that he did not act with malice, we believe that he met this burden, and he was entitled to the affirmative defense of public official immunity. Specifically, the foregoing evidence, taken in the fight most favorable to plaintiff, is insufficient to raise a genuine issue of fact as to the existence of the elements of malice, i.e., that Officer Funk’s actions were contrary to his duty, wanton, and so reckless as to justify a finding of intent to injure. While we do not disagree that the evidence may show that Officer Funk acted with reckless indifference prior to arresting-plaintiff and during his interactions with him, plaintiff has failed to establish Officer Funk acted with malice, even with all discrepancies resolved in his favor, which is a required showing to overcome the public official immunity doctrine. See Griffith v. Glen Wood Co., Inc., 184 N.C. App. 206, 210, 646 S.E.2d 550, 554 (2007) (“Summary judgment is appropriate if . . . the non-moving party is unable to overcome an affirmative defense offered by the moving party.”). Therefore, the trial court erred in denying his motion for summary judgment on this basis.
Conclusion
Based on the foregoing reasons, taking the evidence in a fight most favorable to plaintiff, plaintiff has failed to forecast evidence that Officer Funk acted with malice. Therefore, Officer Funk was entitled to the affirmative defense of public official immunity, and the trial court erred in denying his motion for summary judgment on this basis.
REVERSED.
Judge McCULLOUGH concurs.