F. B. GURGANIOUS v. J. M. SIMPSON, CORONER, DR. P. A. SHELBURNE, DR. H. C. WARWICK, DR. ROY M. SMITH, AND REICH FUNERAL HOME, INC.

(Filed 25 May, 1938.)

**1. Dead Bodies § 5—**

A father may maintain an action for the wrongful mutilation of the dead body of his son, including mutilation by unauthorized autopsy.

**2. Coroners § 2—**

A coroner has no authority to perform an autopsy in cases where there is no suspicion of foul play. C. S., 1020; ch. 209, Public Laws of 1933 (N. C. Code, 5003 [1]).

**3. Public Officers § 8—**

As a general rule, a public officer is not protected from liability on account of his office when the act complained of is outside the scope of his duties, and a public officer is charged with observing the legal limitations upon his authority, especially where rights of third persons are involved.

4. **Dead Bodies § 5—Coroner and physicians performing unauthorized autopsy may be held liable for wrongful mutilation.**

> Both the coroner and physicians performing an autopsy on a dead body, under the coroner's direction, may be held liable by the father of the deceased for wrongful mutilation when the autopsy is ordered by the coroner on his own initiative solely to ascertain the cause of death without suspicion of foul play, since in such case the coroner is without authority to order the autopsy, and his direction therefor can confer no immunity upon the physicians.

5. **Same—**

> Evidence that agents of a funeral home merely failed to object to the performance of an unauthorized autopsy by physicians under direction of the coroner, is insufficient to establish a cause of action against it for wrongful mutilation.

APPEAL by plaintiff from *Hill, Special Judge,* at February Term, 1938, of GUILFORD.

Affirmed as to defendant Reich Funeral Home.

Reversed as to defendants Simpson, Shelburne, Warwick, and Smith.

Action to recover damages for mutilation of the dead body of plaintiff's son. An unauthorized autopsy is alleged. The county coroner, three physicians and an incorporated funeral home are joined as parties defendant. At the close of plaintiff's evidence judgment of nonsuit as to all defendants was entered, and plaintiff appealed.

*Paul Strickland and Wm. L. Robinson for plaintiff, appellant.*
*Hines & Boren and Sapp & Sapp for defendants, appellees.*

DEVIN, J. The right of a father to prosecute an action for damages for the wrongful mutilation of the dead body of his son has been established by the decisions of this Court (*Kyles v. R. R.,* 147 N. C., 394, 61 S. E., 278; *Floyd v. R. R.,* 167 N. C., 55, 83 S. E., 12; *Morrow v. R. R., ante,* 127), and this principle has been extended to include an action based upon an unauthorized autopsy. *Stephenson v. Duke University,* 202 N. C., 624, 163 S. E., 698. The right to bury the dead is generally treated as a *quasi* right of property, and the mutilation of the body held actionable. *Kyles v. R. R., supra; Larsen v. Chase,* 47 Minn., 307.

Here the plaintiff's evidence shows that the autopsy on the body of plaintiff's son was performed by reputable physicians, at a funeral home, by the direction of the county coroner. There is no suggestion that any of these were acting otherwise than in good faith. Under these circumstances will an action for damages lie against them, or any of them? Let us examine the facts upon which liability is claimed.

It appears from the evidence offered by the plaintiff that the body of his minor son was discovered in the Y. M. C. A. swimming pool, in Greensboro, apparently drowned. The plaintiff lives in Wilmington. None of the next of kin of deceased were in the county. The coroner was called in, and he, upon finding no water in the lungs and neck unbroken, had the body removed to the funeral home of one of the defendants, and called in three physicians to make an autopsy to determine the cause of death. The autopsy revealed that death was due to an acute heart attack. It was testified that the defendant Simpson (the coroner) had said "he had the autopsy performed to determine the cause of death, that he had no suspicion of foul play, that no inquest was held." The admission in the answer of the defendant physicians, that they were requested and directed to perform the autopsy "for the purpose of determining the cause of death," was offered in evidence. Admittedly no permission from the father of the deceased, nor any of his kin, was asked or obtained. The father testified he would not have given his consent if it had been requested. He further testified that knowledge of the autopsy on the body of his son shocked and unnerved him equally with the news of his death. There was no evidence that the defendant funeral home offered objection to the autopsy being made, or did anything to prevent it.

The duties and powers of a coroner are prescribed by C. S., 1020. It is apparent from an examination of this statute that no authority is there given the coroner in cases where he does not suspect foul play and where no inquest is held or jury summoned, upon his own initiative, to cause an autopsy to be performed merely to ascertain the cause of death of a person. This statute authorizes an investigation "whenever it appears that the deceased probably came to his death by the criminal act or default of some person," and in such case empowers the coroner "to summon a physician or surgeon and to cause him to make such examination as may be necessary whenever it appears to such coroner as proper to have such examination made."

The right to perform an autopsy is expressly limited by ch. 209, Acts of 1933 (codified in Michie's N. C. Code as section 5003 [1]), where it is provided: "The right to perform an autopsy upon the dead body of a human being shall be limited to cases specially provided by statute or by direction or will of the deceased; cases where a coroner or the majority of a coroner's jury deem it necessary upon an inquest to have such an autopsy; and cases where the husband or wife or one of the next of kin or nearest known relative or other person charged by law with the duty of burial, in the order named and as known, shall authorize such examination or autopsy."

By C. S., 4518, in cases of homicide, the prosecuting officer for the State may direct a *post mortem* examination of the deceased.

It follows that an unauthorized autopsy to determine the cause of death where foul play is not suspected, though ordered by the coroner under color of his office, is in violation of the rights of the next of kin of the deceased, and that the coroner is not protected by the official capacity in which he purports to act. The duty to ascertain the limits of his authority and to observe the law, particularly where the rights of others were affected, was incumbent upon this defendant.

The general rule is that when an officer goes outside the scope of his duty he is not entitled to protection on account of his office, but is liable for his acts like any private individual. 46 C. J., 1043; *Moffitt v. Davis,* 205 N. C., 565, 172 S. E., 317; *Coty v. Baughman,* 50 S. D., 372; 48 A. L. R., 1205; 52 A. L. R., 1447.

It also follows that the physicians who performed the autopsy at the direction of the coroner, upon his request that this be done merely to determine the cause of death, and without the consent of the next of kin, are equally unprotected from liability for an unauthorized invasion of the rights of those injuriously affected. *Woods v. Graham,* 140 Minn., 16.

There was no testimony that the agents of the defendant funeral home did more than fail to offer objection to the action of the coroner by whom the body was brought to its home, and it is not perceived how this evidence can be held sufficient to impose liability for an unauthorized autopsy performed by others and with which it had nothing to do.

It may be noted, in justice to the defendants, that the plaintiff's evidence shows that the autopsy was carefully performed, that there was no mutilation of the body other than an incision sixteen inches long, carefully closed and sewn, and that this did not show when the body was clothed for burial. It also appeared that the marks on the body were but little more than those which would have been rendered necessary in the ordinary process of embalming.

While the defendants doubtless have available testimony tending to controvert the plaintiff's case in material particulars, on a motion for judgment of nonsuit the uniform rule is that the evidence must be considered in its most favorable aspect for the plaintiff. Viewed in this light, we reach the conclusion that as to defendant Reich Funeral Home, Inc., the judgment of the Superior Court should be affirmed, and that as to the defendants Simpson, Shelburne, Warwick and Smith, the judgment of nonsuit should be reversed.

Affirmed as to defendant Reich Funeral Home.

Reversed as to defendants Simpson, Shelburne, Warwick and Smith.