In The Matter of: LUCILLE B. GRAD v. LAURIN J. KAASA, M.D.

No. 8310SC283

(Filed 1 May 1984)

**1. Dead Bodies § 3— liability of medical examiner for wrongful autopsy**

Where a medical examiner receives a death report under G.S. 130-198 or 10 N.C. Administrative Code § 11.0203 and then makes a subjective determination that an autopsy is advisable and in the public interest, his actions are within the scope of his authority and he is immune from liability unless his actions are motivated by malice or corruption.

**2. Dead Bodies § 3— action for wrongful autopsy—malice—genuine issue of material fact**

A genuine issue of material fact was presented as to whether defendant medical examiner acted in reckless disregard of plaintiff's rights by conducting an autopsy on the body of plaintiff's husband who died from a heart attack without first having made a reasonable investigation as to the circumstances of the death where defendant's forecast of evidence tended to show that defendant consulted with the emergency room physician, read the emergency room report and conducted an external examination of the body, that defendant decided to conduct the autopsy because the cause of death was unknown and plaintiff's husband died under unusual or unnatural circumstances, and that defendant made no attempt to check the medical history of the deceased, and where plaintiff's forecast of evidence tended to show that her husband's medical history showed that he had suffered a previous heart attack and had been warned not to overexert himself, that defendant knew how to get in touch with her but did not consult her to obtain information concerning the possible cause of death, and that a physician practicing in Pennsylvania was of the opinion that an autopsy was not necessary to determine the cause of the death of plaintiff's husband.

In re Grad v. Kaasa

**3. Evidence § 50— expert medical testimony—necessity for autopsy—competency of witness**

    In an action to recover damages for an alleged wrongful autopsy conducted by the Wake County Medical Examiner, plaintiff was not required to show that a physician was familier with the standards common to medical examiners in Raleigh or similar communities in order for the physician to give expert opinion testimony that an autopsy was not necessary to determine the cause of decedent's death.

    Judge BRASWELL dissenting.

    APPEAL by plaintiff from *Bailey, Judge.* Order entered 13 January 1983 in WAKE County Superior Court. Heard in the Court of Appeals 10 February 1984.

    Plaintiff, Lucille Grad, seeks compensatory and punitive damages for an alleged wrongful autopsy conducted by defendant, Dr. Laurin Kaasa, upon the body of her husband, Carl Edward Grad. In her complaint, plaintiff alleges that Mr. Grad suffered a heart attack on 17 March 1982 while playing tennis. Mr. Grad was rushed to Wake County Medical Center where he was pronounced dead at 1:44 p.m., after resuscitation efforts failed. An emergency room physician, unable to determine the cause of Mr. Grad's death, referred the case to defendant pursuant to N.C. Gen. Stat. § 130-198 (1981). Defendant conducted an autopsy and determined that Mr. Grad died of a heart attack. During the course of the autopsy, Mr. Grad's vital organs were removed, examined, and then cremated. Defendant did not seek plaintiff's permission to conduct the autopsy, nor did he consult plaintiff or Mr. Grad's medical records to obtain information concerning the possible cause of death before conducting the autopsy. Plaintiff learned of the autopsy several weeks after Mr. Grad's death, when the death certificate was sent to her home. Plaintiff is morally opposed to the practice of cremation and removal of human organs.

    In his answer, defendant alleges that he discussed the case with the emergency room physician, read the emergency room report and conducted an external examination of Mr. Grad's body before deciding to conduct an autopsy. Defendant further contends that his actions were performed in the course of his official duties as Wake County Medical Exam-

iner, that the autopsy was authorized by North Carolina law and that he is therefore entitled to immunity from liability.

After the pleadings were joined, defendant moved for summary judgment. Defendant's motion was supported by plaintiff's interrogatories to defendant, defendant's affidavit, and the affidavit of Dr. Page Hudson, Chief Medical Examiner of North Carolina. In opposition to defendant's motion, plaintiff submitted her interrogatories to defendant, plaintiff's affidavit, and the affidavit of Dr. Edward Notari, a physician practicing in Pennsylvania. After reviewing the materials, the trial judge granted defendant's motion for summary judgment, from which order plaintiff appealed.

*Jordan, Brown, Price & Wall, by Henry W. Jones, Jr., for plaintiff.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Ronald C. Dilthey, for defendant.*

WELLS, Judge.

A motion for summary judgment is proper where ". . . the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Lowe v. Bradford,* 305 N.C. 366, 289 S.E. 2d 363 (1982). When the moving party demonstrates that no material issues of fact exist, the burden shifts to the nonmovant to set forth specific facts showing that genuine issues of fact remain for trial. *Id.*

It is clear that a cause of action exists in North Carolina for wrongful autopsy. *Gurganious v. Simpson,* 213 N.C. 613, 197 S.E. 163 (1938). The cause of action arises from a quasi-property right of the surviving next-of-kin to bury the dead without wrongful interference. *Id. See generally* Annot., 18 A.L.R. 4th 858 (1982).

In North Carolina, performance of autopsies is regulated by statute, and administrative rules adopted under statutory authority. We turn, therefore, to these sources to determine the extent of defendant's liability. Under the rules, the following kinds of deaths must be reported to the medical examiner of the county in

which the body of the deceased is found: homicide, suicide, trauma, accident, disaster, violence, unknown, unnatural or suspicious circumstances, in police custody, jail or prison, by poison or suspected poisoning, suggesting possible public health hazard, during surgical or anesthetic procedures, sudden deaths not reasonably related to previous known diseases and deaths without medical attendance, 10 N.C. Administrative Code, § 11.0203, G.S. § 130-198. Upon receiving a report of a death occurring in any of the circumstances listed above, the medical examiner must take charge of the body, make inquiries regarding the cause of death and make a written report of his findings. G.S. § 130-199.

An autopsy may be lawfully performed without a request only in cases involving a death reported under G.S. § 130-198 and 10 N.C. Administrative Code, § 11.0203 *and* in which the medical examiner determines, in his opinion, that an autopsy is both advisable and in the public interest. G.S. § 130-200, N.C. Administrative Code, §§ 11.0206, -.0210. Autopsies may also be conducted upon the request of a superior court district attorney or superior court judge, or the next-of-kin of the deceased. G.S. § 130-200.

Although the regulations and statutes limit a medical examiner's authority to order autopsies, a violation will not inevitably result in liability. As a general rule, public officials are immune from liability for damages resulting from negligent exercise of their judgment and discretion. A public official will be held liable only if it is shown that he acted entirely outside the scope of his authority or that his act, while inside his authority, was malicious or corrupt. *See Smith v. Hefner*, 235 N.C. 1, 68 S.E. 2d 783 (1952); *Pigott v. City of Wilmington*, 50 N.C. App. 401, 273 S.E. 2d 752, *cert. denied*, 303 N.C. 181, 280 S.E. 2d 453 (1981); 63 Am. Jur. 2d, *Public Officers & Employees* § 289 (1972 & 1983 Supp.). It is clear that a medical examiner is a public official and that the decision to conduct an autopsy is a discretionary one, involving the use of a medical examiner's judgment. 10 N.C. Administrative Code § 11.0210; *Scarpaci v. Milwaukee Co.*, 96 Wisc. 2d 663, 292 N.W. 2d 816 (1980); *Rupp v. Jackson*, 238 So. 2d 86 (Fla. 1970). We must therefore decide (1) whether defendant was within his authority in ordering an autopsy upon Mr. Grad's body

and (2) if defendant was within his authority, whether he acted maliciously in exercising that authority.

[1]   The medical examiner's initial authority is triggered when a death occurs under the circumstances set out in G.S. § 130-198 and 10 N.C. Administrative Code, § 11.0203, and the death is reported to the medical examiner. The medical examiner then has jurisdiction to investigate the death and make a report. He may take the more drastic step of conducting an autopsy, however, only when in his opinion it is advisable and in the public interest that the autopsy be ordered. The statute thus creates one objective prerequisite (report of a death) and one subjective prerequisite (formation of an opinion that an autopsy is advisable and in the public interest) to trigger the medical examiner's authority to conduct an autopsy. 10 N.C. Administrative Code § 11.0210. It is clear, therefore, that a medical examiner acts outside his authority if he subjectively determines that the autopsy is not authorized by statute, yet proceeds anyway. For example, in *Gurganious v. Simpson, supra,* the defendant coroner testified that he did not have permission to conduct an autopsy and did not suspect foul play. The court held that the defendant acted entirely outside the scope of his authority and was not immune from liability since the statute then permitted autopsies only with permission of relatives or where the death was by criminal act. The medical examiner also acts outside the scope of his office if he fails to make any subjective determination at all concerning whether an autopsy would serve the public interest before proceeding. *Scarpaci v. Milwaukee Co., supra.* Conversely, where a medical examiner receives a death report under G.S. § 130-198 or 10 N.C. Administrative Code § 11.0203, and then makes a subjective determination that an autopsy is advisable and in the public interest, his actions are within the scope of his authority and he is immune from liability unless his actions are motivated by malice or corruption. A mere mistake in the exercise of judgment is insufficient to trigger liability where the action is within the officer's authority. 63 Am. Jur. 2d, *Public Officers & Employees, supra.* It would render an official's immunity meaningless if that protection could be overcome by a showing of mere mistake, since immunity would then be available only in cases when no mistake had been made, and obviously immunity would be unnecessary. *Scarpaci v. Milwaukee Co., supra.*

In the case at bar, defendant's forecast of evidence tended to show that defendant received a proper death report and that thereafter he made a subjective determination that an autopsy was advisable and in the public interest. It therefore appears that defendant was acting within the scope of his office and summary judgment in his favor was proper unless the forecast of evidence before the trial court would allow a trier of fact to find that defendant acted maliciously or corruptly.

Malice is present when a defendant acts 'wantonly, doing what any man of reasonable intelligence must have known to be contrary to his duty, and purposely prejudicial and injurious to another . . .' *Givens v. Sellars*, 273 N.C. 44, 159 S.E. 2d 530 (1968), citing 34 Am. Jur. *Malice* § 3 (1941). An action is wanton when it is done '. . . of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others.' *Givens v. Sellars, supra,* citing *Foster v. Hyman,* 197 N.C. 189, 148 S.E. 36 (1929).

[2]   In the case before us, defendant's forecast of evidence tended to show that he ordered the autopsy because he was unable to determine the cause of Mr. Grad's death after consulting with the emergency room physician, reading the emergency room report and conducting an external examination of the body. Defendant did not suspect criminal activity, foul play, or suicide. He ordered an autopsy because the cause of Mr. Grad's death was unknown and because Mr. Grad died under unusual or unnatural circumstances. Defendant made no attempt to check Mr. Grad's medical history, but had he been aware of such history, he would have ordered an autopsy in order to establish the exact cause of death. Plaintiff's forecast of evidence tended to show that Dr. Kaasa knew her and how to get in touch with her, that Mr. Grad's medical history showed he had suffered a previous heart attack and had been warned not to overexert himself. Plaintiff also offered the affidavit of Dr. Notari, who stated that, in his opinion, an autopsy was not necessary in order to determine the cause of Mr. Grad's death. We hold that this forecast of evidence raises a genuine material issue of fact as to whether defendant, although acting within his authority, acted in reckless disregard of plaintiff's rights by ordering an autopsy without first having made further reasonable investigation as to the circumstances of Mr. Grad's death.

[3]   We deem it appropriate to address one other issue discussed in the briefs. Defendant contends that Dr. Notari's affidavit should not be considered as plaintiff failed to establish a foundation showing that Dr. Notari was familiar with the standards common to medical examiners in Raleigh or similar communities. In medical malpractice cases, of course, expert testimony is required to determine if the applicable standard of care has been violated. N.C. Gen. Stat. § 90-21.12 (1981), *Dickens v. Everhart*, 284 N.C. 95, 199 S.E. 2d 440 (1973). The case before us, however, does not involve a medical malpractice claim, and therefore Dr. Notari's lack of familiarity with the standard of care in Raleigh would not affect the competency of his testimony. In general, expert testimony is admissible if the witness can be helpful to the jury because of his or her superior knowledge. Brandis, *North Carolina Evidence*, § 134 (2d Ed. 1982). In his affidavit, Dr. Notari states that, in his opinion, there was ample, available evidence which "must have indicated" that Mr. Grad died of natural causes.

Reversed.

Judge PHILLIPS concurs.

Judge BRASWELL dissents.

Judge BRASWELL dissenting.

When a medical examiner makes a subjective determination that an autopsy is advisable and in the public interest then his actions are within the scope of his authority. The majority opinion holds that a forecast of the evidence clearly shows that Dr. Kaasa, the medical examiner, was acting within the scope of his office (slip opinion, page 6) and within the scope of his authority (slip opinion, page 8), but that there is a genuine issue of fact as to whether Dr. Kaasa "acted in reckless disregard of plaintiff's rights by ordering an autopsy without first having made further reasonable investigation as to the circumstances of Mr. Grad's death." I strongly disagree that a forecast of evidence raises a genuine issue as to whether Dr. Kaasa acted recklessly.

Under all the facts of this case there was no legal duty to make "further reasonable investigation," and no standard exists

In re Grad v. Kaasa

by which to measure this "further reasonable investigation." In spite of the allegation that the plaintiff and defendant had known each other through a previous nurse-doctor working relationship, this did not create a legal duty on Dr. Kaasa, while performing his duties as medical examiner, to telephone plaintiff and ask for her permission to perform an autopsy. All of the evidence shows that Dr. Kaasa acted in good faith. There is not a spark of evidence that Dr. Kaasa acted with malice or corruption.

It is of critical importance that even though the medical examiner may have been able to determine from the general information furnished to him that Mr. Grad had suffered a cardiac arrest, the cause of such cardiac arrest could not have been determined short of an autopsy. With the cause of death unknown, the duty lay within the medical examiner to determine if the cause of death was related to trauma, injury, natural causes, or accident. The record shows that there were extensive injuries to the head and face of Mr. Grad. Plaintiff's complaint and forecast of evidence argues that because she can prove as a fact that Mr. Grad had prior heart trouble that this fact alone should have conclusively eliminated the possibility of death by trauma, accident, or unknown causes, and that therefore it was malicious and corrupt for Dr. Kaasa to determine in his medical examiner discretion that it was advisable and in the public interest to perform an autopsy.

North Carolina has created a system of professional medical examiners which grants them the duty and discretion to use their judgment in deciding when to perform an autopsy under statutory situations. The General Assembly has granted medical examiners immunity from civil lawsuits when acting within the scope of their authority and when not acting corruptly or maliciously. The courts should not take away this immunity.

As our Supreme Court said in *Smith v. State*, 289 N.C. 303, 331, 222 S.E. 2d 412, 430 (1976), *reversed on other grounds*, 298 N.C. 115, 257 S.E. 2d 399 (1979), "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability."

Further, I would hold as a matter of law that plaintiff's use of the affidavit of Dr. Edward J. Notari in her forecast of evidence fails to create any issue of fact on the issues raised in these pleadings, and that the affidavit is of no value in this case.

I dissent and would vote to affirm the granting of summary judgment for the defendant.