IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-63

No. 359A20

Filed 17 June 2022

BRUCE ALLEN BARTLEY

v.

CITY OF HIGH POINT and MATT BLACKMAN in his Official Capacity as a Police Officer with the City of High Point, and Individually.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 272 N.C. App. 224 (2020), affirming a trial court order partially denying defendant's motion for summary judgment entered on 21 October 2019 by Judge Eric C. Morgan in Superior Court, Guilford County. Heard in the Supreme Court on 23 March 2022.

*The Deuterman Law Group, by Seth R. Cohen, for plaintiff-appellee.*

*Poyner Spruill LLP, by David L. Woodard and Brett A. Carpenter, for defendant-appellant.*

EARLS, Justice.

¶ 1       The sole question we consider in this appeal is whether the Court of Appeals erred in affirming the trial court's denial of Defendant Officer Matt Blackman's (Officer Blackman) motion for summary judgment with respect to Plaintiff Bruce Bartley's (Mr. Bartley) claims against him in his individual capacity based upon the defense of public official immunity, concluding that genuine issues of material fact

exist as to whether Officer Blackman acted with malice when he arrested Mr. Bartley for unlawfully resisting, delaying, or obstructing a public officer in discharging or attempting to discharge a public duty in violation of N.C.G.S. § 14-223. We hold that when viewing the evidence in the light most favorable to Mr. Bartley, genuine issues of material fact do exist as to whether Officer Blackman acted with malice in the performance of his duties when he allegedly used excessive force in arresting Mr. Bartley. Therefore, Officer Blackman is not entitled to summary judgment based upon the defense of public official immunity. We affirm the Court of Appeals' affirmance of the trial court's order.

## I.    Background

¶ 2    Mr. Bartley was driving to his home in the afternoon on 23 August 2017 when he crossed a double yellow line to pass the pickup truck that was traveling on Old Mill Road directly in front of him. Mr. Bartley testified in his deposition that he believed passing the slow-moving truck on a double yellow line was legal because the car was traveling at a low rate of speed and impeding traffic. Officer Blackman, a police officer with the City of High Point, testified in his deposition that he was traveling behind Mr. Bartley in an unmarked patrol car when he observed Mr. Bartley pass the truck over the double yellow line. Officer Blackman testified that at that point he activated his blue strobe lights, air horn, and siren, and began catching up to Mr. Bartley's car. Mr. Bartley testified that he did not see anyone

behind him when he looked in the rearview mirror, that he did not see blue lights flashing, and that he did not hear a siren or air horn as he proceeded in the direction of his home.

¶ 3        When Mr. Bartley eventually reached his driveway, he parked, got out of the car, and walked toward the back of his car to retrieve his pet cat. At that moment, he heard someone, whom he identified as a male dressed in plainclothes, twice order him back inside his car. While Officer Blackman testified that he was wearing his departmental issued handgun on his right hip, handcuffs, and an additional ammunition magazine on his left side, that he was carrying his department issued radio in his left hand, and that his badge was on his belt and visible from the front, it is uncontested that Officer Blackman was not dressed in his police uniform and that he did not immediately identify himself as a police officer when he approached Mr. Bartley's driveway and issued commands. Mr. Bartley testified that because he had no reason to know that the person giving him a command was a police officer, he thought that he had done nothing wrong, and suspected that perhaps Officer Blackman was at the wrong address, Mr. Bartley told Officer Blackman that he was on private property and that he was not going to get back into his car.

¶ 4        Officer Blackman testified that after Mr. Bartley twice ignored his command, Officer Blackman used his hand radio to report the traffic stop to law enforcement communications. He gave a description of his location, Mr. Bartley,

and Mr. Bartley's vehicle. Officer Blackman further testified that he requested backup because he believed that there was an officer safety issue based on Mr. Bartley's response to his command to get back into his vehicle "in the face of a traffic stop." Mr. Bartley testified that when he turned his back on Officer Blackman after telling Officer Blackman, who from Mr. Bartley's perspective, was an unidentified trespasser, that he was on private property and that he would not get back into his car, "the next thing" [Mr. Bartley] knew, he was "body slammed" against the trunk of his vehicle, handcuffed, and told he was being detained.

¶ 5 Mr. Bartley testified repeatedly that "[Officer Blackman] slammed me against the back trunk lid of my vehicle and handcuffed me." Officer Blackman testified that he put Mr. Bartley in handcuffs because (1) Mr. Bartley ignored his commands and told him that he was on private property, which Officer Blackman believed to create a safety issue because he had no way of knowing Mr. Bartley's intentions, and (2) Officer Blackman believed that Mr. Bartley's refusal to comply with Officer Blackman's commands to get back in the car constituted probable cause to charge Mr. Bartley with resisting, delaying, or obstructing a public officer. Officer Blackman denied that he body slammed and tightly handcuffed Mr. Bartley when he carried out the arrest.

¶ 6 Mr. Bartley testified that following his arrest, he remained in handcuffs in his driveway in full view of his neighbors for 20–25 minutes even after he was patted

down by Officer Blackman and even though a backup officer had been called to the scene. Mr. Bartley further stated that he asked Officer Blackman to loosen the handcuffs because they were too tight and were hurting his wrists, but Officer Blackman refused and insisted that if Mr. Bartley had done as he was initially told, then he would not have been in this situation. Mr. Bartley claims that the forcefully applied handcuffs left red marks and bruises on his wrists, which he photographed on the day of the incident.

¶ 7 Mr. Bartley was charged with violating N.C.G.S. § 14-233 (resisting, delaying, and obstructing a public officer) for exiting his vehicle and refusing to obey commands.[1] He also was cited for passing another vehicle in a prohibited passing zone over a double yellow line pursuant to N.C.G.S. § 20-146(a). Mr. Bartley hired an attorney who advised him to take a driving class and complete twenty hours of community service, both of which he did. It is uncontested that the charges against Mr. Bartley were dismissed.

¶ 8 On 20 December 2018, Mr. Bartley filed a civil suit against Officer Blackman, in both his official and individual capacities; and against the City of High Point; for malicious prosecution, false imprisonment/arrest, and assault and battery.

---

[1] The dissent asserts that "[i]t is undisputed that Officer Blackman had probable cause to arrest Bartley." 2022-NCSC-63, ¶ 46. However, that is disputed. Among his other claims, Mr. Bartley sued Officer Blackman for false arrest whereby he challenges the lawfulness of his detainment. The issue of whether Officer Blackman had probable cause to arrest Mr. Bartley for violating N.C.G.S. § 14-223 is not before us.

Defendants answered the complaint on 25 January 2019, asserting the defenses of governmental and public official immunity, among others. In his complaint, Mr. Bartley alleged that he was forcibly thrown against the trunk of his car, handcuffed, and charged with resisting an officer in the driveway of his residence after passing a slow-moving vehicle on Old Mill Road and being followed by Officer Blackman, a plain-clothes High Point police detective driving an unmarked vehicle.

¶ 9 On 19 September 2019, defendants filed a general motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure on the grounds that there was no genuine issue as to any material fact and that defendants were entitled to judgment as a matter of law. On 21 October 2019, the trial court dismissed with prejudice Mr. Bartley's claims against the City of High Point and Officer Blackman in his official capacity on the ground that sovereign immunity barred those claims. The trial court denied defendants' summary judgment motion as to the claims against Officer Blackman in his individual capacity "finding that there are genuine issues of material fact as to these claims that preclude summary judgment as a matter of law." Officer Blackman appealed from the order partially denying his motion for summary judgment as to the claims against him in his individual capacity.

## II. Court of Appeals Opinion

¶ 10 On appeal, Officer Blackman argued that the trial court erred in denying his

motion for summary judgment based upon the defense of public official immunity. He also asked the Court of Appeals to address the merits of the claims against him. On 7 July 2020, a divided panel of the Court of Appeals affirmed the trial court's order, concluding that Officer Blackman was not entitled to summary judgment on the ground of public official immunity, and declined to reach the merits of the underlying claims because Officer Blackman had no right to interlocutory review on the other issues he sought to raise. *Bartley v. City of High Point*, 272 N.C. App. 224 (2020). The court explained that "[p]olice officers engaged in performing their duties are public officials for the purposes of public official immunity [and] enjoy absolute immunity from personal liability for discretionary acts done without corruption or malice." *Id.* at 227–28 (cleaned up). The court noted that a police officer is therefore generally "immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt," *id. at* 228, and ultimately concluded that the facts of this case as alleged with respect to each claim were sufficient to raise an issue of genuine material fact as to whether Officer Blackman acted with malice.

In dissent, Judge Tyson concluded that Mr. Bartley "did not carry his 'heavy burden' to survive Officer Blackman's motion for summary judgment on the issue of his individual liability under public official immunity." *Id.* at 239–40 (Tyson, J., dissenting). Judge Tyson reasoned that some of Mr. Bartley's admissions about a

civilian's right to ignore an officer's directives during an investigatory stop and his general admissions about some of his alleged movements during the encounter were "sufficient to defeat [his] claims." *Id.* at 237. The dissent further opined that Mr. Bartley had "not met his 'heavy burden' 'to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial.'" *Id.* (quoting *Leete v. Cnty. Of Warren*, 341 N.C. 116, 119 (1995); *Draughon v. Harnett Cnty. Bd. of Educ.*, 158 N.C. App. 208, 212 (2003)). In Judge Tyson's view, the majority's opinion misapplied the standard of review and purported to shift the "heavy burden" Mr. Bartley must carry to prevail in this context. *Id.* Judge Tyson concluded that "[no] genuine issues of material fact exist in the pleadings, depositions, and affidavits served and entered in this matter to overcome defendant's motions and to deny summary judgment," and that the trial court's ruling should have therefore been reversed and remanded for entry of summary judgment in favor of Officer Blackman. *Id.* at 240.

¶ 12    Officer Blackman appealed the Court of Appeals' decision to this Court as a matter of right based on Judge Tyson's dissent.

### III.    Standard of Review

¶ 13    Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." N.C.G.S. § 1A-1, N.C. R. Civ. P. 56(c); *see also Singleton v. Stewart*, 280 N.C. 460, 464–65 (1972). "An issue is genuine if it 'may be maintained by substantial evidence.'" *City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 654 (1980) (quoting *Koontz v. City of Winston-Salem*, 280 N.C. 518, 518 (1972)). Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion. *State v. Mann*, 355 N.C. 294, 301 (2002). An issue is material if, as alleged, facts "would constitute a legal defense, or would affect the result of the action or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz*, 280 N.C. at 518. When examining a summary judgment motion, "'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.'" *Caldwell v. Deese*, 288 N.C. 375, 378 (1975) (quoting 6 James Wm. Moore, *Moore's Federal Practice* § 56.15[3], at 2337 (2d ed. 1971)).[2] This standard requires us to refrain from weighing the evidence or making credibility determinations. *Howerton v. Arai Helmet, Ltd.* 358 N.C. 440, 471 (2004) (explaining that when reviewing a motion for summary

---

[2] The dissent's statement of the proper standard at summary judgment fails to acknowledge this principle of black letter law and disregards it. It may be true that "[i]t is a difficult time to be in law enforcement" but our task here is not to weigh the competing deposition testimony, decide whose version of the events is correct, substitute our judgment for that of a jury, give preferential consideration to law enforcement officers, or provide them absolute immunity from any liability no matter what they do. At this stage, the question is whether the evidence, taken in the light most favorable to the non-moving party, creates a disputed issue of material fact related to public official immunity. *See, e.g., Ussery v. Branch Banking and Trust Co.*, 368 N.C. 325, 334 (2015) (facts must be viewed in light most favorable to the non-moving party on motion for summary judgment).

judgment, it is not the function of the court to weigh conflicting record evidence and that issues "legitimately called into question" should be preserved for resolution by a jury*)*; *see also Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 584 (4th Cir. 2017) (observing that in the summary judgment posture, courts must not credit defendant's evidence, weigh the evidence, or resolve factual disputes in the defendants' favor).

¶ 14 We review a trial court's order granting or denying summary judgment de novo. *Craig v. New Hanover Cnty. Bd. of Educ*, 363 N.C. 334, 337 (2009). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* (cleaned up).

## IV.   Analysis

### A. Jurisdiction

¶ 15 Officer Blackman appeals from the trial court's order partially denying summary judgment on Mr. Bartley's claims against him in his individual capacity. Accordingly, we first address the threshold issue of the reviewability of an order denying Officer Blackman's motion for summary judgment.

¶ 16 Ordinarily, the denial of a summary judgment motion is not immediately appealable as an interlocutory order. *See Veazey v. City of Durham*, 231 N.C. 354, 357 (1950). An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court to settle and determine the entire controversy. *Id.* An immediate appeal does not lie to this Court from an interlocutory order unless it concerns a judicial decision affecting a

substantial right claimed in the action or proceeding by the appellant.*Id.* The "substantial right" test for appealability asks whether the challenged order "will work injury to appellant if not corrected before appeal from final judgment." *Stanback v. Stanback*, 287 N.C. 448, 453 (1975*); see also* N.C.G.S. § 1-277.

The denial of summary judgment on the ground of public official immunity is immediately appealable because it affects a substantial right. Public official immunity is more than a mere affirmative defense to liability as it shields a defendant entirely from having to answer for his conduct in a civil suit for damages. *See Thompson v. Town of Dallas*, 142 N.C. App. 651, 653 (2001) (quoting *Epps v. Duke University*, Inc., 122 N.C. App. 198, 201 (1996)) (explaining that an interlocutory appeal of an order denying a dispositive motion is allowed because "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action."), *disc. review denied,* 344 N.C. 436 (1996)); *see also Summey v. Barker*, 142 N.C. App. 688, 689 (2001); *Leonard v. Bell*, 254 N.C. App. 694, 697 (2017). If the trial court erroneously precludes a valid claim of public official immunity and the case proceeds to trial, immunity from trial would be effectively lost. *Corum v. Univ. of North Carolina*, 97 N.C. App. 527, 532 (1990) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985)), *rev'd in part on other grounds*, 330 N.C. 761 (1992).

Unquestionably, the trial court's order denying Officer Blackman's motion for

summary judgment is interlocutory; it does not dispose of the action against him and leaves matters to be judicially determined between the parties which requires further action by the trial court. However, Officer Blackman asserts a claim of public official immunity, an immunity from suit that would be compromised if he were required to go to trial. Therefore, this interlocutory appeal of the denial of summary judgment on that issue is properly before this Court.

**B. Public Official Immunity**

Public official immunity, a judicially-created doctrine, is "a derivative form" of governmental immunity which shields public officials from personal liability for claims arising from discretionary acts or acts constituting mere negligence, by virtue of their office, and within the scope of their governmental duties. Since the early twentieth century, the chief function of public official immunity has long been understood to shield public officials from tort liability when those officials truly perform discretionary acts that do not exceed the scope of their official duties. *See generally Hipp v. Ferrall*, 173 N.C. 167 (1917); *Templeton v. Beard*, 159 N.C. 63 (1912). The immunity has been recognized in furtherance of two primary goals. First, it promotes the "fearless, vigorous, and effective administration" of government policies. *Pangburn v. Saad*, 73 N.C. App. 336, 344 (1985). It is presumed that in the absence of the immunity, liability concerns rather than the public interest may drive the actions of some public officials. Second, it mitigates the negative impact that

trepidation about personal liability might otherwise have on the willingness of individuals to assume public office. *Id.* (observing that, without public official immunity, the "threat of suit could . . . deter competent people from taking office"). *See also Isenhour v. Hutto*, 350 N.C. 601, 610 (1999) ("Public officials receive immunity because it would be difficult to find those who would accept public office or engage in the administration of public affairs if they were to be personally liable for acts or omissions involved in exercising their discretion." (cleaned up).

¶ 20     Public official immunity has therefore never been extended to an official who, clothed with discretion, commits acts that are at odds with the protections afforded by the doctrine and which underlie its utility. An individual will not enjoy the immunity's protections if his action "was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Wilcox v. City of Asheville*, 222 N.C. App. 285, 230 (2012) (citing *Smith v. State,* 289 N.C. 303, 331 (1976)), *disc. review denied and appeal dismissed*, 366 N.C. 574 (2013). Generally, public officials have been recognized as individuals who occupy offices created by statute, take an oath of office, and exercise discretion in the performance of their duties. *Pigott v. City of Wilmington*, 50 N.C. App. 401, 403–04 (1981); *Gunter v. Anders*, 114 N.C. App. 61, 67 (1994). North Carolina courts have deemed police officers engaged in performance of their duties as public officials for the purposes of public official immunity: "a police officer is a public official who enjoys absolute immunity from personal liability for discretionary acts

done without corruption or malice." *Campbell v. Anderson*, 156 N.C. App. 371, 376 (2003).

¶ 21       Our precedent instructs that "[i]t is well settled that *absent evidence to the contrary*, it will always be presumed 'that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law.' " *Leete v. Cty. of Warren*, 341 N.C. 116, 119 (1995) (emphasis added) (quoting *Huntley v. Potter,* 255 N.C. 619, 628 (1961)). This Court has never regarded the presumption of good faith that attends a public officer's actions as conclusive. When read in its full context, this language creates a rebuttable presumption that loses its force when a party produces competent and substantial evidence that an officer failed to discharge his duties in good faith. *Id.,* 341 N.C. at 119 (plaintiffs have met their burden to overcome this presumption).

¶ 22       Significantly, our courts have recognized public official immunity as an affirmative defense that must be properly asserted by the defendant to receive its protection. *See generally Fullwood v. Barnes*, 250 N.C. App. 31 (2016); *Mabrey v. Smith,* 144 N.C. App. 119 (2001). In other words, the defendant must assert official immunity as an affirmative defense because

> [a]s to such defenses, he is the actor, and hence he must establish his allegations in such matters by the same degree of proof as would be required if he were plaintiff in an independent action. This is not a shifting of the burden of proof; it simply means that each party must establish his own case.

*Speas v. Merchants' Bank & Trust Co. of Winston-Salem*, 188 N.C. 524, 531 (1924) (citations omitted); *see also,* 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 32 n. 29, at 120 (4th ed. 1993). If the defendant cannot meet this burden of production, "he is not entitled to protection on account of his office, but is liable for his acts like any private individual." *Gurganious v. Simpson,* 213 N.C. 613, 616 (1938).

**C. Public Official Immunity Applied in this Case**

To survive a motion for summary judgment based on public official immunity, a plaintiff must make a prima facie showing that the defendant-official's tortious conduct falls within one of the immunity exceptions. *Dempsey v. Halford*, 183 N.C. App. 637, 640–41 (2007). A tortious act that is malicious thus pierces the cloak of official immunity that would otherwise bar suit and liability for the tortious act. *Fox v. City of Greensboro*, 279 N.C. App. 301, 2021-NCCOA-489, ¶ 51 (2021). This Court has held that "[a] defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *In re Grad v. Kaasa*, 312 N.C. 310, 313 (1984). Elementally, a malicious act is one which is "(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." *Wilcox*, 222 N.C. App. at 289. "An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." *Yancey v. Lea,*

354 N.C. 48, 52 (2001). "Gross violations of generally accepted police practice and custom" contributes to the finding that officers acted contrary to their duty. *Prior v. Pruett*, 143 N.C. App. 612, 623–24 (2001), *disc. review denied*, 355 N.C. 493 (2002).

¶ 24    We have held that "the intention to inflict injury may be constructive" intent where an individual's conduct"is so reckless or so manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent." *Foster v. Hyman*, 197 N.C. 189, 192 (1929). In the context of intentional tort claims, including assault and battery, "[w]anton and reckless behavior may be equated with an intentional act." *Pleasant v. Johnson,* 312 N.C. 710, 715 (1985), and "evidence of constructive intent to injure may be allowed to support the malice exception to [public official] immunity." *Wilcox*, 222 N.C. App. at 291.

¶ 25    Mr. Bartley claims that Officer Blackman acted with malice by body slamming him against the trunk of his car and tightly handcuffing him without justification. Thus, we decide whether, viewed in the light most favorable to Mr. Bartley, the evidence raises a genuine issue of material fact concerning whether Officer Blackman acted with malice; that is, whether his actions were wanton, contrary to his duty, and intended to injure Mr. Bartley. We hold that the evidence in this case does raise an issue of material fact with respect to this question.

¶ 26    At common law, a "law enforcement officer has the right, in making an arrest

and securing control of an offender, to use only such force as may be reasonably necessary to overcome any resistance and properly discharge his duties." *Lopp v. Anderson*, 251 N.C. App. 161, 172 (2016). While an officer is vested with such a right, "[a police officer] may not act maliciously in the wanton abuse of his authority or use unnecessary and excessive force." *Myrick v. Cooley*, 91 N.C. App. 209, 215 (1988). In similar fashion, our General Statutes dictate that a law enforcement officer is justified in using force upon an individual when and to the extent that the officer reasonably believes it necessary to prevent escape from custody or to effect an arrest of an individual who the officer reasonably believes has committed a criminal offense, unless the officer knows the arrest is unauthorized. *See* N.C.G.S. § 15A-401(d). Accordingly, a civil action for damages for assault and battery is available at common law against one who, for the accomplishment of a legitimate purpose, such as justifiable arrest, uses force which is excessive under the given circumstances. *Lopp*, 251 N.C. App. at 172(2016) (quoting *Myrick*, 91 N.C. App. at 215).

¶ 27        Mr. Bartley testified that Officer Blackman approached him from behind and "body slammed" him against the trunk of his car. Officer Blackman acknowledged during his deposition that Mr. Bartley did not resist arrest, verbally or physically threaten him, or try to evade the arrest before he placed Mr. Bartley in handcuffs. It is also undisputed that Mr. Bartley was unarmed during the encounter. Officer Blackman's actions in these circumstances, as described by Mr. Bartley, using a body

slam maneuver to subdue an unarmed, nonresistant individual who posed no threat to him is evidence of malice.

¶ 28        Additional evidence of malice comes from Mr. Bartley's testimony about how tightly Officer Blackman handcuffed him, Officer Blackman's refusal to loosen the handcuffs, and the red marks and bruises that Mr. Bartley sustained to his wrist as a result. Furthermore, Mr. Bartley testified that Officer Blackman stated that if Mr. Bartley had done as he was initially told, he would not be in the situation that he was in, and that Mr. Bartley remained handcuffed for at least twenty minutes in front of neighbors, which is evidence of retaliation.

¶ 29        Cases from the federal courts are instructive on the question of whether tight handcuffing resulting in physical injury indeed constitutes excessive force and therefore some evidence of malice. The Third Circuit and the Sixth Circuit have affirmatively recognized the general proposition that excessively tight or forceful handcuffing, particularly handcuffing that results in physical injury, constitutes excessive force. *See, e.g.*, *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (recognizing excessively tight handcuffing constitutes excessive force), *cert denied*, 543 U.S. 956 (2004); *Martin v. Hiedeman*, 106 F.3d 1308, 1313 (6th Cir. 1997) (construing "excessively forceful handcuffing" as an excessive force claim).

¶ 30        The Sixth Circuit articulated its test for evaluating whether a handcuffing claim may survive summary judgment in *Morrison v. Bd. Of Trs.*, 583 F.3d 394, 401-

02 (6th Cir. 2009). To state such a claim, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) the plaintiff complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing. *Id. See also McGrew v. Duncan*, 937 F.3d 664, 668 (6th Cir. 2019) (holding that allegations of bruising and wrist marks create a genuine issue of material fact regarding whether an officer violated plaintiff's right to be free from excessive force). *Cf. Brissett v. Paul*, No. 97-6898, 1998 WL 195945, at *4–5 (4th Cir. 1998) (unpublished) (affirming the district court's decision that a police officer did not use excessive force because plaintiff did not offer evidence that he sustained any physical injury from being handcuffed and arms being held in painful position).

¶ 31        Mr. Bartley's evidence establishes that he complained of his discomfort, and Officer Blackman refused to heed his complaints and loosen the handcuffs. To be sure, Officer Blackman's testimony offers an entirely different description of the material facts. He testified that he effectuated Mr. Bartley's arrest by "merely plac[ing] one hand on [Mr. Bartley's] "wrist" and his other hand on [Mr. Bartley's] "[u]pper back," and leaning Mr. Bartley over the trunk lid of his car so that he was "[b]ending at the waist." Officer Blackman further testified that he "took [Mr. Bartley] by the left arm and went to extend his arm and then to put it behind his back." Officer Blackman also insisted that when Mr. Bartley refused his multiple orders to get back in his

vehicle, he was authorized to place Mr. Bartley in handcuffs to protect his safety and carry out the traffic stop. He emphasized in his testimony that his use of handcuffs "remained the least intrusive means reasonably necessary to carry out the purpose of the stop." Officer Blackman's testimony certainly creates a disputed issue of material fact; however, it is not the version of events that is determinative on summary judgment, where the question before us is whether the evidence in the light most favorable to the non-moving party is sufficient to establish malice that defeats a claim of public official immunity.

¶ 32    N.C.G.S. § 15A-401(d), as does the common law, prescribes that police officers have a duty to use only the force that is reasonably necessary in detaining an individual. The use of unreasonable, unnecessary, and excessive force is prohibited by law. Considering the facts in the light most favorable to Mr. Bartley, as we must, there is a panoply of evidence which establishes that a genuine issue of material fact exists as to whether Officer Blackman's allegedly forcible tactics were contrary to his duty for purposes of establishing the first element of malice.[3] Furthermore, Officer Blackman's alleged statement to Mr. Bartley that he would not have been "in this

---

[3] The dissent states that "Officer Blackman had probable cause to arrest Bartley." 2022-NCSC-63, ¶ 45. Whether there was probable cause for an arrest is disputed, and it is also not determinative on the question of public official immunity. Where, as here, a plaintiff comes forward with evidence that an officer used excessive force to execute an otherwise valid arrest, such evidence may be sufficient to establish a genuine dispute of material fact concerning whether the officer acted wantonly or contrary to his duty within the meaning of the malice exception to public official immunity.

situation" had Mr. Bartley obeyed commands from Officer Blackman raises questions that can only be resolved by a jury. For example, is "this situation" that Officer Blackman referenced the situation of having just been body slammed and thrown into the trunk of a car, tightly handcuffed and bruised, and humiliated in front of neighbors following the commission of a traffic infraction? This statement creates a genuine issue of material fact concerning whether Officer Blackman's allegedly gratuitous tactics manifested a reckless indifference to Mr. Bartley's rights and were so reckless or manifestly indifferent to the consequences, where the safety of life and limb are involved, as opposed to being necessary for officer safety as Officer Blackman insists. *See Wilcox*, 222 N.C. App. at 291-92. Such a question is a factual one that is typically reserved for a jury. *See, e.g.*, *State v. McCombs*, 297 N.C. 151, 156 (1979); *Leiber v. Arboretum Joint Venture, LLC*, 208 N.C. App. 336, 348 (2010). Mr. Bartley has presented sufficient evidence of malice to create a disputed issue of material fact that prevents summary judgment on the ground of public official immunity.

## V. Conclusion

To establish that Officer Blackman is not entitled to the defense of public official immunity, and thus to defeat his motion for summary judgment, Mr. Bartley produced evidence that Officer Blackman acted with malice when he arrested him. Viewing the facts that Mr. Bartley has proffered in support of his claim in the light

most favorable to him, we conclude that there is a genuine issue of material fact as to whether Officer Blackman acted with malice in carrying out his official duties.

¶ 34        The purpose of summary judgment is to dispose of claims in which there are no disputed issues as to any material facts such that "only questions of law are involved and a fatal weakness in the claim of a party is exposed." *Dalton v. Camp*, 353 N.C. 647, 650 (2001). Attempts to make credibility determinations or to resolve disputed versions of events in the course of prematurely disposing of this case serves only to confuse the role of a judge and a jury. *Crocker v. Roethling*, 363 N.C. 140, 142–43 (2009) (instructing that it is error for the trial court to enter summary judgment for defendant when the evidence forecast by plaintiff established a genuine issue of material fact to be properly decided by a jury). We therefore hold that the Court of Appeals did not err in affirming the trial court's order partially denying Officer Blackman's summary judgment motion on the basis of public official immunity.

AFFIRMED.

Justice BERGER dissenting.

It is a difficult time to be in law enforcement. The majority today makes it even more challenging by expanding exposure to personal liability for increasingly common encounters with recalcitrant members of our society. Because the majority effectively eliminates public official immunity for law enforcement officers in North Carolina, I respectfully dissent.

On August 23, 2017, at approximately 3:17 pm, Officer Blackman—at the time an eight-year veteran of the High Point Police Department—was driving in his unmarked patrol car on routine patrol. At the time, Officer Blackman was wearing his department "issued handgun on [his] right side, [his] departmental issued badge on [the front of his] belt, [and his] handcuffs and additional magazine on [his] left side." Officer Blackman observed a 2017 Mercedes pass a truck "on the left over the double yellow line." The vehicle was operated by Bruce Allen Bartley, a 5'7" white male. Officer Blackman testified that he viewed Bartley's moving violation of passing the truck on the left over a double line as serious and as dangerous as the other violations he has observed and cited.

Officer Blackman attempted to initiate a traffic stop of Bartley's vehicle, however due to oncoming traffic and an upcoming curve, Officer Blackman could not immediately and safely pass the truck in front of him to catch up to Bartley. As he overtook the truck, Officer Blackman activated his lights and siren and began

catching up with Bartley's vehicle to make the traffic stop. Bartley turned onto Yates Mill Court, and Officer Blackman testified that he "was concerned that [Bartley] was aware [Officer Blackman] was behind him and [he] was attempting to make it to the – a house."

¶ 38 Bartley pulled into the driveway at 1860 Yates Mill Court and Officer Blackman pulled in behind Bartley. Officer Blackman left his blue strobe lights on, but "as [he] was nearing the back of [Bartley's] car," he turned off his siren. Bartley got out of his vehicle and was "[h]eading towards the back" [of the vehicle] when he saw Officer Blackman. Officer Blackman got out of his vehicle and ordered Bartley back into the Mercedes. Bartley looked directly at Officer Blackman and ignored the order.

¶ 39 Bartley testified at a deposition that, in total, Officer Blackman told him to get back in the car "[t]wice." Bartley's response was, "[I] told him I was on private property" and "I was not getting back in the car"

¶ 40 Officer Blackman testified at his deposition that he "believed that there was an officer safety issue based on [Bartley] exiting the vehicle, approaching [Officer Blackman], [and] saying he's on private property in the face of a traffic stop." Officer Blackman testified "ultimately we got within arms reach of [each] other." Because of Bartley's actions, Officer Blackman believed that handcuffing Bartley "was the safest for both of [them]." At that point, Officer Blackman had no way of knowing what

Bartley's intentions were toward him or toward any other aspect of the traffic stop. Officer Blackman told Bartley he was being detained, and Bartley admitted that Officer Blackman placed one hand on his wrist and the other on Bartley's upper back. Bartley was "leaning over the vehicle . . . [b]ending at the waist," when Officer Blackman went to handcuff him. Officer Blackman "took [Bartley] by the left arm and went to extend [Bartley's] arm and then put it behind [Bartley's] back, and as [Officer Blackman] did that, [Bartley's] left arm tensed up and lifted up in a form of resistance." At this point, Officer Blackman had probable cause to arrest Bartley for resisting a public officer pursuant to N.C.G.S. §14-223.

According to Bartley, he was in that position for "seconds" while Officer Blackman put on the handcuffs. When asked whether Bartley felt any contact with Officer Blackman's body, Bartley responded, "[j]ust his hands."

Summary judgment is "a device to bring litigation to an early decision on the merits without the delay and expense of a trial where it can be readily demonstrated that no material facts are in issue." *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971).

> The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975). "The device used is one whereby a party may in effect force his opponent to produce a forecast of evidence

> which he has available for presentation at trial to support his claim or defense. A party forces his opponent to give this forecast by moving for summary judgment. Moving involves giving a forecast of his own which is sufficient, if considered alone, to compel a verdict or finding in his favor on the claim or defense. In order to compel the opponent's forecast, the movant's forecast, considered alone, must be such as to establish his right to judgment as a matter of law." 2 McIntosh, N. C. Practice and Procedure, s 1660.5 (2d ed. Phillips Supp.1970).

*Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E.2d 419, 422 (1979). Summary judgment is appropriate "where a claim or defense is utterly baseless in fact, [or] where only a question of law on the indisputable facts is in controversy and it can be appropriately decided without full exposure of trial." *Kessing*, 278 N.C. at 533, 180 S.E.2d at 829. "[N]o matter how material a fact may be to the determination of an issue in a case, if it is patently false or its existence defies all common sense and reason, it is not genuine." G. Gray Wilson, North Carolina Civil Procedure § 56-4 (3d ed. 2007).

¶ 43  This Court has held that public officials are entitled to a presumption that they will "discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." *Leete v. Cty. of Warren,* 341 N.C. 116, 119, 462 S.E.2d 476, 478 (1995). The party challenging the validity of a public officials' actions bears a heavy burden; competent and substantial evidence is required to defeat this presumption. *Id.* For purposes of public official immunity, law enforcement officers engaged in the performance of their duties are public officials protected from liability

"for mere negligence." *See Smith v. State,* 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976). It is uncontroverted that Officer Blackman was performing his duties as a law enforcement officer when he initiated the traffic stop that led to Bartley's arrest.

> As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability. A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.

*Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890–91 (1984) (cleaned up).

¶ 44　　As such, the burden now rests with plaintiff to show that Blackman acted with malice to overcome the presumption, and the trial court must decide "whether plaintiff sufficiently forecasted evidence for each element of malice." *Brown v. Town of Chapel Hill*, 233 N.C. App., 257, 265, 756 S.E.2d 749, 755. Bartley has failed to make such a forecast of the evidence, and Officer Blackman is entitled to summary judgment because there is no genuine issue of material fact.

¶ 45　　Officer Blackman had probable cause to arrest Bartley. Bartley committed a traffic infraction by crossing over a double yellow line to pass another vehicle, did not immediately pull over when Officer Blackman initiated his siren and strobe light, and resisted arrest after Officer Blackman had issued multiple commands which Bartley acknowledged he heard. Bartley admitted that refusing to obey a police officer's

command is unlawful and acknowledged that he could understand Officer Blackman's perspective in arresting Bartley.

¶ 46    The majority holds that genuine issues of material fact exist as to whether Officer Blackman acted with malice in performance of his duties when he allegedly used excessive force in arresting Bartley.  Specifically, the majority focuses on Bartley's deposition testimony in which he alleged that Officer Blackman approached him from behind and "body slammed" him against the trunk of his car.  The term "body slam" was used just once by Mr. Bartley in his deposition and twice in a written statement Bartley prepared for his own benefit.  Bartley's testimony regarding Officer Blackman's specific actions is wholly inconsistent with the definition of the term "body slam."  Merriam-Webster defines body slam as "a wrestling throw in which the opponent's body is lifted and brought down hard to the mat." *Body-Slam, Merriam-Webster Dictionary* (11th ed. 2003); *see also*, *Body Slam,* https://www.dictionary.com/browse/body-slam (accessed June 7, 2022).  While Bartley's single reference in his deposition to being body slammed may not be patently false, it appears to be baseless in fact in that it runs counter to his step-by-step testimony of Officer Blackman's actions.  According to Bartley, Officer Blackman had one hand on Bartley's wrist and the other on Bartley's upper back.  It defies common sense that from this position Officer Blackman lifted Bartley's body off the ground and then hurled him onto the trunk of Bartley's vehicle, without any other

part of Officer Blackman's body making contact with Bartley. In addition, Bartley testified that he suffered no harm, perceived, or otherwise, from Officer Blackman placing him on the trunk of his vehicle. The only purported harm that Bartley experienced during the entire encounter was related to the tightness of the handcuffs, not due to a body slam. It is undisputed that Officer Blackman had probable cause to arrest Bartley, and Officer Blackman was not acting contrary to his duty when he detained and handcuffed Bartley.

¶ 47        Bartley was also required to produce "competent and substantial evidence" that Officer Blackman possessed an intent to injure. To establish an intent to injure, "the plaintiff must show at least that the officer's actions were so reckless or so manifestly indifferent to the consequences as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent." *Brown,* 233 N.C. App. at 269, 756 S.E.2d at 758 (cleaned up). The majority relies on Bartley's testimony concerning how tightly Officer Blackman handcuffed him, Officer Blackman's refusal to loosen the handcuffs, and the red marks and bruises that Bartley sustained to his wrist in finding that Officer Blackman's use of force was done with an intent to injure.

¶ 48        The majority cites federal cases from the Third and Sixth Circuits recognizing the general proposition that excessively tight or forceful handcuffing, particularly handcuffing that results in physical injury, constitutes excessive force. Fourth Circuit cases tend to support the opposite conclusion. For example, in *Carter v.*

*Morris*, the Fourth Circuit held that the plaintiff's allegation that her handcuffs were too tight would not support an excessive force claim. 164 F.3d 215, 219 n.3 (4th Cir. 1999). Additionally, in *Cooper v. City of Virginia Beach*, the Fourth Circuit affirmed an award of qualified immunity at the summary judgment stage in an excessive force claim based on unduly tight handcuffing. 817 F. Supp. 1310, 1319 (E.D. Va. 1993), *aff'd,* 21 F.3d 421 (4th Cir. 1994). In *Cooper*, the record indicated that the plaintiff was allegedly handcuffed so tightly that his hands grew numb. *Id.* The court found the excessive force claim deficient because the plaintiff failed to offer sufficient evidence of actual injury. *Id.* Notably, the court also stressed that the handcuffing in and of itself was not unreasonable, particularly in light of the plaintiff's apparent intoxication. *Id.*

¶ 49          Officer Blackman testified that Mr. Bartley's behavior was threatening and alarming, and Officer Blackman felt like he was in danger and believed that handcuffing Mr. Bartley "was the safest for both of [them]." Bartley alleged he suffered some purported redness to his wrists from the tightness of the handcuffs. One must strain to observe the purported injury in the exhibits contained in the record. Nonetheless, Bartley admitted he received no medical treatment and had no sensitivity, strange feeling, nerve damage, tingling, or lack of use of his wrists. Bartley could not even remember if the alleged redness on his wrists lasted until the next day.

¶ 50   Finally, as evidence of actual intent, the majority cites Bartley's testimony that Officer Blackman made the comment that if Bartley had done as he was instructed, he would not be in "this situation." The majority also cites the fact that Mr. Bartley remained handcuffed for at least twenty minutes in front of neighbors as evidence of retaliation.

¶ 51   This is not the "competent and substantial evidence" that plaintiff needs to overcome his heavy burden. Officers routinely make remarks to inform individuals why they have been placed into handcuffs or in the patrol vehicle. An officer acting in accordance with his training would attempt to deescalate the situation by explaining to an individual who refused to follow commands that his or her actions are the reason for their situation. It certainly is an accurate statement that had Bartley simply complied with the officer's instructions he would not have been handcuffed and arrested. At any rate, this statement is not evidence of "retaliation" and it is not sufficient for plaintiff to overcome his heavy burden.[1]

¶ 52   Bartley has not produced "competent and substantial evidence" necessary to carry his "heavy burden" to forecast specific facts constituting malice, and Officer Blackman is entitled to judgment as a matter of law. To hold otherwise would

---

[1] It is also worth noting that Officer Blackman took the time to turn the ignition of Bartley's car on so that Bartley's cat, which was in the back of his vehicle, would not overheat during the encounter. This further negates any notion that Officer Blackman was acting with malice.

effectively eliminate public official immunity for law enforcement officers and expose them to personal liability for every encounter in which an arrest is made. Unfortunately, the majority does just that, and being a law enforcement officer in North Carolina just became even more challenging.

Chief Justice NEWBY and Justice BARRINGER join in this dissenting opinion.